Victor Garcia **GONZALEZ, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 01–87–00493–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 9, 1988.

Robert F. Alexander, Houston, for appellant.

John B. Holmes, Harris County Dist. Atty., Roe Morris, Asst. Dist. Atty., for appellee.

Before JACK SMITH, BISSETT and COHEN, JJ.

## OPINION

JACK SMITH, Justice.

A jury found appellant guilty of murder and assessed his punishment at 40 years confinement.

In his first point of error the appellant contends that the trial court erred in allowing a State's witness to give identification testimony because of an impermissibly suggestive photographic spread.

The two-part test to be used when challenging a pre-trial identification proceeding is set forth in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). First, the photographic display itself must be impermissibly suggestive. Second, the display must give rise to a very substantial likelihood of irreparable misidentification. *Id.* at 384, 88 S.Ct. at 971. In determining whether a photographic display is impermissibly suggestive, thus tainting the in-court identification, the totality of the circumstances surrounding the identification should be examined. *Limuel v. State,* 568 S.W.2d 309, 312 (Tex.Crim. App.1978).

Factors to be considered in evaluating the likelihood of misidentification because of the suggestiveness of the confrontation procedures for the purpose of determining the admissibility of the out-of-court identification include: (1) the opportunity of the identification witness to view the criminal at the time of the crime; (2) the witness' degree of certainty; (3) the accuracy of a prior description; (4) the level of certainty demonstrated by the identification witness at the confrontation; and (5) the length of time between the confrontation and the crime. *Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

The photospread in the present case consisted of photos of five Hispanic males with similar characteristics who were in approximately the same age range. Appellant asserts that he was the only one in the photospread in "jail garb." However, upon viewing the photospread, we find that appellant's clothing is not significantly different from that of the other members of the array.

Appellant's photograph contains a sign with the words, "King County, Washington," and a number underneath the lettering. Appellant asserts that this "mug shot," containing his inmate identification number along with a location of a custodial facility, was impermissibly suggestive. The State argues that because the witness

could not read English and did not know what the word "custody" meant, this sign was not impermissibly suggestive to her.

The record reflects that the identification witness, Milagro Portillo, the victim's daughter, could not read or speak English. She testified at trial through an interpreter. Portillo saw appellant only about five minutes on the night of the murder, and the record reflects that she was very distraught about the shooting of her father. She gave the police the following description: Hispanic male; approximately 23 years of age; five feet, three inches to five feet, five inches tall; weighing 130 to 140 pounds; and straight black hair, collar length.

Sergeant Castillo showed Portillo the photospread on October 25, 1985, and asked her "if she could identify any of the people...." He stated that she positively identified appellant. Milagro Portillo also identified appellant in court as the man who murdered her father. She stated that she knew him from the apartment complex on Tidwell where she previously lived. She also saw him on the "first floor of the Sheriff's" when she viewed the line-up. Portillo knew appellant by the name of "Jesse Garcia."

At first, Portillo stated that Sergeant Castillo did not give her any instructions, but just showed her the pictures. She testified that the sergeant did not tell her who to pick. She asserted that she had no problems picking the appellant, that she would recognize him without the line-up or photo array, and that she had seen him many times before. Portillo did not know what the sign on appellant's photo meant because she did not read English. She claimed that she recognized appellant based on what she observed on December 15, 1984, the night her father was murdered. However, on cross-examination, she stated that Sergeant Castillo told her that "I had to identify the five who are there. I had to identify one of them."

The trial court found that Milagro Portillo was acquainted with appellant prior to the night that her father was murdered; that her in-court identification was based on her prior acquaintance with appellant and her observations on the night of the murder; and that the photospread was not unduly suggestive. The trial court also found that the line-up identification violated appellant's right to counsel and was impermissibly flawed because Sergeant Castillo told Portillo after she viewed the photospread that she had chosen the person that the police believed had committed the offense.

We find that the photo array was impermissibly suggestive. *Compare Rodgers v. State*, 744 S.W.2d 281, 283–84 (Tex.App.—Fort Worth 1987, no pet.) (word "Grand" on photo, where robbery occurred in Grand Prairie, Texas, did not render photospread impermissibly suggestive). However, we find that any alleged taint of Portillo's in-court identification of appellant by an improper pre-trial photospread identification was rendered harmless because of her testimony that her in-court identification was based on her recollection of the murder and her prior acquaintance with appellant. When an in-court identification is of independent origin, the identification testimony is properly admissible. *See Jackson v. State*, 628 S.W.2d 446, 448–49 (Tex.Crim. App.1982).

Appellant argues that the taint was not removed because Portillo's identification was contradictory. When Portillo's testimony is viewed in its entirety, it is apparent that many of the inconsistencies arose because she was answering through an interpreter. Portillo consistently maintained that she knew appellant before the offense, although her testimony regarding the number of times that she had seen him before varied. She also consistently stated that she recognized appellant as the murderer from the night her father was killed.

Point of error one is overruled.

■ Appellant's second point of error contends that he was denied reasonably effective assistance of an interpreter. He contends that the testimony of five witnesses, three for the defense, was marred repeatedly by errors made by the interpreter, who translated the testimony from Spanish to English. He characterizes these

errors as: (1) no English response at all; (2) addition of third person to the response; (3) failure to relay the entire response; (4) failure to cut off a lengthy response by a witness; and (5) incorrect translations.

Tex.Code Crim.P.Ann. art. 38.30 (Vernon Supp.1988), in pertinent part, provides:

When a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must be sworn to interpret for him. Any person may be subpoenaed, attached or recognized in any criminal action or proceeding, to appear before the proper judge or court to act as interpreter therein, under the same rules and penalties as are provided for witnesses. In the event that the only available interpreter is not considered to possess adequate interpreting skills for the particular situation or the interpreter is not familiar with use of slang, the person charged or witness may be permitted by the court to nominate another person to act as intermediary between himself and the appointed interpreter during the proceedings.

While Tex.Code Crim.P.Ann. art. 38.31 (Vernon Supp.1988) does set forth the qualifications required for an interpreter for the deaf, no specific qualification requirements are mentioned for interpreters for non-English speaking individuals or individuals suffering from mental or physical impairments. *See Minor v. State,* 659 S.W.2d 161, 164 (Tex.App.—Fort Worth 1983, no pet.).

Appellant's counsel requests that we apply the standard of review set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). However, we find the proper standard to be whether the trial court abused its discretion in failing to appoint another interpreter. *Compare Minor v. State,* 659 S.W.2d at 164 (appointment of partisan interpreter is within sound discretion of the trial court absent an abuse of discretion). The question is whether there are any inac-

curacies or improper translations that could have misled the jury. *Vindel v. State,* 537 S.W.2d 264, 265 (Tex.Crim.App.1976); *Sanders v. State,* 640 S.W.2d 640, 643 (Tex. App.—Houston [14th Dist.] 1982, no pet.).

In *Vindel,* 537 S.W.2d at 265, the Court of Criminal Appeals refused to find reversible error because there was no showing or claim of actual bias of the interpreter; no showing of any specific inaccuracy; nor an objection to the interpreter during the trial. In the instant case, we note that although appellant's counsel made numerous complaints to the trial court and objected to several interpretations, there is no indication on the record that he requested the trial court to appoint another interpreter.

We address appellant's complaints individually. First, he contends that several times the interpreter did not respond at all. From our review of the record, we find that on all of these occasions but one, the interpreter did not respond because there was no Spanish response from the witness to translate. The record in these situations indicates "no response." By reviewing the context of the record, it is apparent that the Spanish witness was unable to comprehend the question, and counsel then rephrased the question and always obtained a response.

In one instance, however, the record clearly indicates "No English response." The interpreter was admonished by the trial court, and told to "say what she says." Thereafter, the question was repeated, and a translation was given.

Second, appellant complains because the interpreter continually added the words "he said" or "she said" to her translations. Most of these errors occurred during the first witness' testimony. After several off-the-record discussions at the bench, the trial court admonished the interpreter to "please say exactly what she says, word-for-word. You've got to do it word-for-word." When translating for the next four witnesses, the interpreter only added the third person three times, and was strongly admonished by the court on one of those occasions.

Next, appellant claims that the interpreter failed to relay complete responses and failed to cut off lengthy responses by the witnesses so that phrases could be translated. After a review of the entire record, we find only two instances when the interpreter failed to relay a complete response. On both of these occasions, the error was pointed out by the prosecutor or defense counsel, and the interpretation was corrected. As to the interpreter's failure to cut off responses by the witnesses, we note that when counsel objected to this, the court admonished the witness, not the interpreter, to let the interpreter translate "a little bit at a time" before he continued with his response.

Finally, we address appellant's most critical complaint: whether the improper translations by the interpreter could have misled the jury. The first translation error occurred when appellant's counsel was questioning Milagro Portillo about a statement made by the murderer on the night of the shooting. The record indicates some confusion over whether the witness responded "tonight is the night you shall die," "today is the day you shall die," or "this is the day you die." After a discussion off-the-record, the court told the interpreter, "You've got to translate it exactly, word-for-word. You can't sub in one word for another." Thereafter, the question was repeated, and counsel did not object to the interpretation, but stated: "I'd like to state my objection that this is being improperly translated by this translator, in order to do justice to the defendant."

Throughout the remaining witnesses' testimony that was translated by the interpreter, appellant's counsel made several objections because the interpreter did not correctly interpret the response. We note that in each instance, the error was pointed out by counsel, and the response was corrected. When appellant testified, the interpreter who was assisting the district attorney was requested by defense counsel to clarify some of the terms that the interpreter had incorrectly translated.

Although the interpreter did make translation errors, these errors were called to the court's attention, usually by appellant's counsel, who spoke Spanish. In each instance, a correction was given. Appellant's counsel made no request on the record for the court to remove the interpreter.

Article 38.30 states that if the interpreter does not possess adequate skills, the person charged may be permitted by the court "to nominate another person to act as intermediary between himself and the appointed interpreter during the proceedings." Appellant's trial counsel understood the Spanish witnesses, and was able to point out the specific inaccuracies made by the interpreter. The prosecutor had an interpreter to assist her, and was also able to complain about inaccurate interpretations so that they could be corrected. Because the jury received the correct translation, we cannot say that it was misled. We find no reversible error and no abuse of discretion in failing to appoint another interpreter.

Point of error two is overruled.

■ In his third point of error, appellant asserts that the evidence is insufficient to sustain his conviction. He contends that the testimony of the two identification witnesses is too contradictory to establish beyond a reasonable doubt that he murdered Portillo's father. He relies on this Court's striking of Portillo's identification under his first point of error.

Milagro Portillo testified that Francisco Peneda came to the apartment that she shared with her father and Marina Contrera on December 15, 1984. Peneda opened the door and let a man inside. She stated that she recognized the man because she had seen him around her old apartment on Tidwell. She stated that she knew him by the name of "Jesse Garcia." She then identified the appellant as the man who murdered her father. When appellant entered the door to the apartment, he told her father, "Today is the day you shall die." She tried to stop appellant from hitting her father, struggled with Peneda, and ran after Peneda into a back bedroom. She then heard three or four shots, and ran back to see her father dead on the floor. Appellant ran out, breaking a window with his foot.

Anna Marina Contrera testified that when the man came in with the gun, she grabbed her child and hid in a closet. She stated that the man in court looked different from the murderer. The murderer had longer hair and a mustache. The State then handed her the photo array, and she identified appellant's picture. In the photo, appellant had longer hair and a mustache.

Four defense witnesses testified that the appellant was not the same "Jesse Garcia" that they knew. These witnesses claimed that the "Jesse Garcia" who lived at the apartments on Tidwell looked like appellant, but they had never seen appellant before. Appellant testified that he did not know the Portillos, that he did not kill Juan Antonio Portillo, and that he was in Los Angeles at the time of the murder.

As the finder of fact, the jury is the sole judge of the credibility of the witnesses, and is entitled to disbelieve appellant's version. *Rumbaugh v. State*, 629 S.W.2d 747, 751 (Tex.Crim.App.1982). After viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Point of error three is overruled.

The judgment is affirmed.