IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-208-CR





JERALD D. CLARK,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE





 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 0910223, HONORABLE BOB PERKINS, JUDGE PRESIDING



 






 This appeal is taken from a conviction for attempted capital murder. Tex. Penal
Code Ann. § 15.01(a), § 19.03(a)(1) (West Supp. 1994). After the jury found appellant guilty,
it assessed his punishment at ten years' imprisonment.

 Originally, appellant advanced three points of error. He claimed that (1) the
indictment and charge failed to state the required culpable mental state; (2) his "statement" was
not voluntarily made and should not have been admitted into evidence; and (3) the complainant's
in-court identification of appellant was inadmissible because it was based on a prior suggestive
identification and had no independent origin.

 Subsequently, appellant filed a motion to abate the appeal in order to file an out-of-time motion for new trial. This Court granted the abatement for the trial court to file findings of
fact and conclusions of law concerning the voluntariness of appellant's statement. See McKittrick
v. State, 535 S.W.2d 873, 876 (Tex. Crim. App. 1976). The trial court had failed to make the
findings required. Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 1979). In addition, this
Court, in the same order, abated the appeal to permit appellant to file a motion for new trial based
on newly discovered evidence. Tex. R. App. P. 30, 2(b) & 80(c); State ex rel Holmes v. Shaver,
824 S.W.2d 285, 289 (Tex. App.--Texarkana 1992, no pet.); Harris v. State, 827 S.W.2d 442,
443 (Tex. App.--San Antonio 1992, no pet.); Harris v. State 818 S.W.2d 231 (Tex. App.--San
Antonio 1991, no pet.); see also Tuffiash v. State, No. 04-91-698-CR (Tex. App.--San Antonio,
March 30, 1994 and May 16, 1994, no pet. h.). This portion of the order was based in part on
appellant's claim that since the time in which to file a motion for new trial had elapsed, appellant's
counsel had learned that the Austin police officer who took appellant's confession had been
investigated or was being investigated by the district attorney's office concerning allegations that
the officer had used coercion in obtaining confessions and "may have testified falsely in a case." 
Appellant's counsel also asserted that he had belatedly learned that the case against co-defendant
Johnny Byrd had been dismissed because the eyeglasses found at the shooting scene had been
determined not to be Byrd's after Byrd had been examined by a State's doctor.

 In response to this Court's order, the trial court filed the required findings of fact
and conclusions of law concerning the voluntariness of the written confession. The trial court also
heard and overruled the out-of-time motion for new trial based on newly discovered evidence.

 Appellant has now filed an "amended brief" renumbering the points of error and
adding four new points. None of the new points of error concern the hearing on the out-of-time
motion for new trial or the belatedly filed findings of facts and conclusions of law. Normally, a
point of error raised for the first time in an amended or supplemental brief is not properly
presented. Rochelle v. State, 791 S.W.2d 121, 124 (Tex. Crim. App. 1990). We shall first
consider the original three points of error and then take under advisement the new points.

 The sufficiency of the evidence is not challenged. The facts of the case shall be
briefly set forth in order to place the points of error in proper perspective. In the early morning
hours of April 25, 1990, Austin police officer Gerardo Gonzalez was on patrol. While driving
on East 12th Street in a high drug-crime area, Gonzalez observed two men in an undetermined
transaction as the men appeared to exchange "something." After he drove past, Gonzalez
observed furtive action on the part of the two men. The officer eventually stopped the men and
ordered them to keep their hands in view. One of the men, later identified as appellant, stopped
and placed his hands on the hood of Gonzalez's patrol car. The other man kept moving and then
charged the officer. They scuffled and the man shot at the officer causing powder burns. 
Gonzalez struck the man with a flashlight knocking the pistol out of his hand and causing him to
fall to the ground where his eyeglasses came off. Officer Gonzalez heard a shot and became
aware that appellant was firing at him. Appellant fired two more shots directly at the uniformed
officer and fled. Gonzalez gave chase and fired two shots, but both men escaped.

 On April 26, 1990, Edward Hernandez, appellant's probation officer, read a
newspaper story about the shooting which contained Gonzalez's description of the two men. 
Hernandez believed that appellant fit the description of the "tall, slim black person" and he knew
appellant lived in the vicinity of the shooting. Hernandez telephoned the police with this
information. Later on the same day, appellant reported to Hernandez, but denied any involvement
in the shooting. The next morning, Officer Gonzalez identified appellant from a photographic
line-up or spread. That afternoon two officers went to appellant's house and asked him to
accompany them to the police station. Some seven hours later, appellant gave a written
confession. He claimed, however, that he fired the shots only to enable his companion to escape.

 Appellant's initial complaint is that the "indictment and charge to the jury in this
case failed to state the required culpable state." The single point of error is directed to both the
indictment and charge and is multifarious. Normally, multifarious points of error present nothing
for review. Adkins v. State, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988); Cuevas v. State, 742
S.W.2d 331, 335 n.4 (Tex. Crim. App. 1987), cert. denied, 485 U.S. 1015 (1988). By
combining more than one legal theory in a single point of error an appellant risks rejection on the
ground that nothing is presented for review. Sterling v. State, 800 S.W.2d 513, 521 (Tex. Crim.
App. 1990), cert. denied, 111 S.Ct. 2816 (1991). When, however, separate references to the
record regarding each contention are made, a multifarious point of error may be required to be
reviewed. Armstrong v. State, 845 S.W.2d 909, 910 (Tex. Crim. App. 1993); see also Imo v.
State, 822 S.W.2d 635, 636 (Tex. Crim. App. 1992); Davis v. State, 817 S.W.2d 345, 346 (Tex.
Crim. App. 1991). In the instant point of error, no record page number references are set out,
no authorities are cited, and no argument is advanced as to the charge. Tex. R. App. P. 74(d),
(f). Nothing is presented for review as to the charge. Kelly v. State, 817 S.W.2d 168, 175 (Tex.
App.--Austin 1991, pet. ref'd); cf. Imo, 822 S.W.2d at 636.

 We shall consider appellant's complaint as to the indictment. The indictment, a
reindictment, provides in pertinent part that on or about April 25, 1990, appellant:



with the specific intent to commit the offense of Capital Murder, did an act which
amounted to more than mere preparation that tended but failed to effect the
commission of the offense intended, namely, Jerald D. Clark did then and there
attempt to cause the death of Gerardo Gonzalez, a peace officer, acting in the
lawful discharge of an official duty, by shooting a deadly weapon, to-wit, a firearm
in the direction of the said Gerardo Gonzalez and the said Jerald D. Clark did then
and there know the said Gerardo Gonzalez was a peace officer.



 Appellant complains that the reindictment eliminated the phase "intentionally and
knowingly" from in front of the phrase "attempt to cause the death of Gerardo Gonzalez, a peace
officer" which was found in the original indictment. Appellant filed a motion to quash the new
indictment on the grounds, inter alia, that it failed to allege any mens rea in connection with the
shooting of a firearm "and the underlying offense of capital murder."

 Section 15.01(a) of the Texas Penal Code provides: "A person commits an offense
if with specific intent to commit an offense, he does an act amounting to more than mere
preparation that tends but fails to effect the commission of the offense intended." Tex. Penal
Code Ann. § 15.01(a) (West Supp. 1994). The elements necessary to establish attempt, including
specific intent to commit an offense, are set out in McCravy v. State, 642 S.W.2d 450, 455 (Tex.
Crim. App. 1982) (op. on reh'g). For attempted murder under sections 15.01(a) and 19.02(a)(1),
the specific intent required as an element of section 15.01(a) is the intent to cause the death of an
individual. Tex. Penal Code Ann. § 19.02(a)(1) (West 1989); Rocha v. State, 648 S.W.2d 298,
301 (Tex. Crim. App. 1982). Section 19.03(a)(1) of the Texas Penal Code, defining capital
murder, provides: "(a) A person commits an offense if he commits murder as defined under
Section 19.02(a)(1) of this Code and: (1) the person murders a peace officer or fireman who is
acting in the lawful discharge of an official duty and who the person knows is a peace officer or
fireman." Tex. Penal Code Ann. § 19.03(a)(1) (West 1989). 

 The instant indictment alleged in part that appellant "did then and there attempt to
cause the death of Gerardo Gonzalez, a peace officer." In Ex parte Bartmess, 739 S.W.2d 51,
53 (Tex. Crim. App. 1987), the court held that an indictment which alleged that a defendant
attempted to cause the death of an individual, necessarily incorporated allegations of intent to do
the same, and, hence satisfied the mens rea requirement for attempted murder. There, the Court
noted that it had long held that the allegation of the word "attempt" satisfies the need for a
culpable mental state as to the attempted felony. Id. The Court explained:



 The rationale for this longstanding precedence is definitional in nature. The
word "attempt," by its very definition, implies an intent plus an actual effort to
carry out or consummate the intended act. Thus, "attempt" includes the mental
state of "intent" by comprising a more comprehensive meaning. Accordingly, the
instant indictment which alleges an attempt to cause the death of an individual
necessarily incorporates an allegation of intent to do the same, thus satisfying the
mens rea requirement for attempted murder.


 Having found the indictment valid and devoid of fundamental defects, the
relief requested is denied.



739 S.W.2d at 53 (citations omitted).

 We conclude that Bartmess is persuasive. While it is "better practice to allege the
culpable mental state of the attempted offense," Ex parte Prophet, 601 S.W.2d 372, 374 (Tex.
Crim. App. 1980), the indictment sufficiently alleged the offense of attempted capital murder. 
Appellant attempts to distinguish Bartmess and Prophet on the basis that those cases involved post-conviction habeas corpus proceedings. However, in Bartmess the court held the indictment was
"valid," and we do not interpret Bartmess or Prophet to call for a different result here on direct
appeal. The trial court did not err in overruling the motion to quash the indictment.

 If it can be argued that the indictment was deficient for failure to give appellant
adequate notice to prepare his defense, Adams v. State, 707 S.W.2d 900, 903 (Tex. Crim. App.
1986), instructs us how to answer the contention when the motion to quash has been overruled. 
In reaching the proper conclusion, we must answer three questions: Did the charging instrument
fail to convey some requisite item of notice? If not, we overrule the point. If so, we go to the
second question: In the context of the case, did the defect have an impact on defendant's ability
to prepare his defense? If not, we overrule the point. Id. If so, we go to the third question: 
How great was the impact on defendant's ability to prepare his defense? If the impact was
insignificant, we overrule the point. If the impact was substantial, we sustain the point and
reverse. Id.; see also Cook v. State, 824 S.W.2d 338, 338 (Tex. App.--Houston [1st Dist.] 1992,
pet. ref'd). Applying the Adams instructions, we find no affirmative answers to any of the
questions. Appellant's first point of error is overruled.

 In the second point of error, it is claimed that "appellant's statement should not
have been admitted into evidence because it was not voluntarily made." Appellant filed pretrial
motions to suppress his statement. The trial court accorded him a pretrial hearing on the
voluntariness and admissibility of his statement. See Jackson v. Denno, 378 U.S. 368 (1964);
Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979). At the conclusion of the hearing, the trial
court found that the written statement or confession was voluntarily made and admissible. The
trial court belatedly filed its findings of fact and conclusions of law. At the trial on the merits,
the written statement was admitted into evidence after the proper predicate was laid.

 In its findings and conclusions, the trial court found that appellant voluntarily came
to the police station with Officer Tommy Conner at 4:48 p.m. on April 26, 1990; that appellant
was given the warnings required by Miranda v. Arizona, 348 U.S. 346 (1966) and article 38.22
of the Texas Code of Criminal Procedure; that appellant knowingly, intelligently and voluntarily
waived those rights; and that appellant acknowledged receiving and understanding his rights by
signing the "blue card" containing the requisite warnings. The trial court found that appellant was
given unlimited access to the telephone, and used the same; that he never requested the right to
have a lawyer present; and that he was provided food. The trial court also found that no
promises, threats or coercion were used to induce appellant to made the confession; that prior to
the signing of the confession the Miranda warnings were again read to appellant; and that in the
presence of two civilian witnesses, appellant signed the confession after assuring one of the
civilian witnesses that he was doing so voluntarily. The trial court concluded as a matter of law
that the written confession was voluntarily given and thus admissible in evidence.

 At a hearing on a motion to suppress a confession, the trial court is the trier of fact
and judge of the credibility of the witnesses as well as of the weight to be given their testimony. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Peacock v. State, 819 S.W.2d
233, 235 (Tex. App.--Austin 1991, no pet.); Port v. State, 798 S.W.2d 839, 842 (Tex.
App.--Austin 1990, pet. ref'd). On appeal, the reviewing court does not engage in its own factual
review, but decides whether the trial court's findings are supported by the record. Romero, 800
S.W.2d at 543; King v. State, 831 S.W.2d 891, 893 (Tex. App.--Houston [14th Dist.] 1992, no
pet.). The only inquiry on appeal is whether the trial court improperly applied the law to the
facts. King, 831 S.W.2d at 893. We conclude that the record supports the fact findings and that
the trial court has not misapplied the law.

 We shall address some of the contentions advanced by appellant. He contends that
the language of the confession indicates that it was composed in part by someone else. We do not
find that this matter was ever called to the trial court's attention. Appellant now notes three places
in the confession which he questions as being in his language. A confession need not be in the
exact language of the accused. Bell v. State, 724 S.W.2d 780, 793 (Tex. Crim. App. 1986), cert.
denied, 479 U.S. 1046 (1987). The contention is without merit.

 Appellant also urges that the detention preceding the confession was too lengthy
and rendered the confession involuntary. The trial court found that the appellant's interrogation
began at approximately 4:48 p.m. on April 26 and that the written statement was signed at 12:15
a.m. on April 27, 1990, a period of seven hours and twenty-seven minutes. The record shows
that for two hours appellant denied he had any knowledge of the shooting incident. Time was
consumed in permitting appellant to call his home on several occasions and to call a friend
(apparently Johnny Byrd), and in permitting appellant to eat. Officer Polanco related that
appellant was left alone for some period of time while they worked on other cases. After
appellant gave his confession, it was typed, and then appellant was interviewed by two civilian
witnesses before it was signed at 12:15 a.m. Prolonged interrogation, either continuous or with
intervals may be coercive by itself. Singleton v. State, 543 S.W.2d 138, 139 (Tex. Crim. App.
1976). However, the six hour supervision by the Austin Police Department did not raise the
presumption that the confession in Singleton was involuntary, and neither did the eight hour
questioning (over a two-day period) in Cox v. State, 644 S.W.2d 26, 28-29 (Tex. App.--Houston
[14th Dist.] 1989, pet. ref'd). We conclude that the presumption was not raised in the instant
case.

 Appellant also urges that the confession was involuntary because Officer Polanco
promised appellant to "reduce his probation" if he cooperated. Appellant so testified at the
suppression hearing. Polanco, who took the confession, denied that such a promise, or any
promise, was made to appellant. It is obvious that appellant, who changed his testimony on
several matters, was not believed by the trier of fact. A four-prong test must be met in order to
render involuntary a confession obtained by a promise of a benefit. Sossamon v. State, 816
S.W.2d 340, 345 (Tex. Crim. App. 1991); Fisher v. State, 379 S.W.2d 900, 902 (Tex. Crim.
App. 1964). The promise must be of some benefit to the defendant, be positive, be made or
sanctioned by a person in authority, and be of such character as would be likely to influence a
defendant to speak untruthfully. Long v. State, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991),
cert. denied, 112 S.Ct. 3042 (1992); Smith v. State, 779 S.W.2d 417, 427 (Tex. Crim. App.
1989). To reach a determination on the fourth and last prong of the test, the reviewing court must
look to whether the circumstances of the promise inclined the defendant "to admit a crime he had
not committed." Fisher, 379 S.W.2d at 900; see also Sossamon, 816 S.W.2d at 345. Under the
circumstances here presented, the fourth prong of the test was not met. See Ortiz-Salazar v. State,
687 S.W.2d 502, 504 (Tex. App.--Dallas 1985, pet. ref'd).

 After the State rested its case at the guilt/innocence phase of the trial, appellant for
the first time called Dr. Charles Fitzsimmons, a psychologist, as a witness. Fitzsimmons reported
that he had been retained by defense counsel to test appellant and testify. He reported that
appellant's IQ was 68 on one test and 69 on another test, and that appellant was "in the borderline
area of mental deficiency," and was less likely than others in the normal IQ range to understand
the consequences of signing a confession. This was the principal thrust of the witness's brief
testimony before the jury on direct examination. On cross-examination, Fitzsimmons agreed that
he had spent only three hours in testing and interviewing appellant, whom he had not previously
met. The witness was not aware of the contents of the signed confession at the time of the
evaluation, and he acknowledged that he and appellant did not discuss the facts of the case or the
offense charged.

 While an appellant's limited intelligence is a factor to be considered, that alone does
not mandate a finding of involuntariness of a confession as a matter of law. Smith, 779 S.W.2d
at 428-29; King v. State, 831 S.W.2d at 895; Price v. State, 818 S.W.2d 883, 887 (Tex.
App.--Corpus Christi 1991, no pet.). A confession is not inadmissible merely because the accused,
who is not claimed to be insane, is of less than normal intelligence. Casias v. State, 452 S.W.2d
483, 488 (Tex. Crim. App. 1970) (noting that the defendant had an IQ of 68 and a mental age of
eight to ten years); Rodriguez v. State, 666 S.W.2d 305, 313 (Tex. App.--San Antonio 1984, no
pet.); see also Walker v. State, 842 S.W.2d 301, 303 (Tex. App.--Tyler 1992, no pet.). Cf.
Peacock v. State, 819 S.W.2d at 235.

 Moreover, the testimony of the psychologist was not offered at the suppression
hearing or before the confession was admitted into evidence before the jury at the trial on the
merits. His testimony was offered as part of the appellant's case-in-chief, and the trial court was
never asked to reconsider its suppression ruling or to withdraw the confession from evidence.

 After an examination of the totality of the circumstances as required, Alvarez v.
State, 649 S.W.2d 613, 620 (Tex. Crim. App. 1982), we conclude that the trial court did not
abuse its discretion in finding appellant's written confession was freely and voluntarily given. The
court's findings will not be disturbed. Jacobs v. State, 787 S.W.2d 397, 400 (Tex. Crim. App.
1990). Point of error two is overruled.

 In his third point of error, appellant complains that "Officer Gonzalez's in-court
identification of appellant was based on a prior suggestive identification and had no independent
origin." Apparently, appellant refers to the action of the trial court in overruling the pretrial
motion to suppress the in-court identification.

 The two-part test to be used when challenging a pretrial identification proceeding
is set forth in Simmons v. United States, 390 U.S. 377, 384 (1968). First, the photographic
display itself must be impermissibly suggestive. Second, the display must give rise to a very
substantial likelihood of irreparable misidentification. Id. In determining whether a photographic
display is impermissibly suggestive, thus tainting the in-court identification, the totality of the
circumstances surrounding the identification should be examined. Limuel v. State, 568 S.W.2d
309, 312 (Tex. Crim. App. 1978). Factors to be considered in evaluating the likelihood of
misidentification because of the suggestiveness of the confrontation procedures for the purpose
of determining the admissibility of the out-of-court identification include: (1) the opportunity of
the identification witness to view the criminal at the time of the crime; (2) the witness's degree
of certainty; (3) the accuracy of a prior description; (4) the level of certainty demonstrated by the
identification witness and the confrontation; and (5) the length of time between the confrontation
and the crime. Manson v. Braithwaite, 432 U.S. 98, 114-16 (1977); Neil v. Biggers, 409 U.S.
188, 199-200 (1972).

 The photographic spread in the instant case consisted of photos of six Black males
with similar characteristics who were in approximately the same age range. Appellant asserts that
he was the only one in the photographic line-up in jail clothing. Upon viewing the photographic
spread in the record, we do not find that appellant's clothing was significantly different from that
of other members of the array. See Gonzalez v. State, 752 S.W.2d 695, 696 (Tex. App.--Houston
[1st Dist.] 1988, pet. ref'd). All the photographs were head and shoulder pictures. There was no
lettering, numbering or marking on the photographs. Officer Gonzalez, who viewed the
photographic line-up, testified that as a police officer he was able to tell that all the photographs
were "mug shots." Under the circumstances, the procedure did not result in the suggestion that
appellant had some history of wrongdoing not shared by the other subjects. While picturing one
of several subjects in jail garb may be a key factor in determining whether a photographic lineup
is tainted, Turner v. State, 614 S.W.2d 144, 146 (Tex. Crim. App. 1981), the same is not true
here.

 Appellant relies heavily upon Officer Gonzalez's testimony at the suppression
hearing. In response to the trial court's questions, Gonzalez testified that his identification of
appellant was based on the photographic spread and not on what he saw at the scene of the
shooting. Thereafter, however, Gonzalez testified that his in-court identification of appellant was
based on his observations at the time appellant shot at him and "absolutely not" on the
photographic spread. After a recess, Gonzalez was recalled and explained that he was confused
by the trial court's questions; that he thought he was being asked if he knew appellant's name and
knew who appellant was at the time of the shooting; and that he did not learn appellant's name
until after he had selected appellant's picture from the photographic array. It is observed that
Gonzalez's description of his assailant, given immediately after the shooting, was consistent with
appellant's physical characteristics. The description was detailed enough that appellant's
probation officer suspected that appellant was the person described. The scene of the shooting
was "well lit" by street lights. Moreover, the record does not support any claim of suggestiveness
on the part of the officers who conducted the line-up. Gonzalez immediately recognized appellant
from the photographic spread and was as certain in his courtroom identification of appellant.

 At a suppression hearing, the trial court is the sole judge of the credibility of the
witnesses and the weight to be give their testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). The trial court may accept or reject any or all of the witnesses' testimony. 
Id. We do not engage in our own factual review. We consider only whether the trial court
improperly applied the law to the facts. Id. Absent an abuse of discretion, we do not disturb the
trial court's findings. Maddox v. State, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985).

 We conclude that the trial court did not err in overruling the motion to suppress. 
Gonzalez's in-court identification of appellant and his subsequent pre-trial identification from the
photographic spread were both admissible. Point of error three is overruled.

 As noted earlier, appellant has attempted to raise four additional points of error by
an amended or supplemental brief. These points were not originally raised nor do they concern
the hearing on the out-of-time motion for new trial based on newly discovered evidence as
authorized by this Court. As observed, a point of error raised for the first time in an amended
or supplemental brief is not normally considered to be properly presented. Rochelle, 791 S.W.2d
at 124; Salazar v. State, 773 S.W.2d 34, 40 (Tex. Crim. App. 1989); Coleman v. State, 632
S.W.2d 616, 619 (Tex. Crim. App. 1982); Berrios-Torres v. State, 803 S.W.2d 91, 95 (Tex.
App.--Austin 1990, no pet.). The rule relates to the orderly and timely presentation of issues on
direct appeal to a court of appeals. The decision to consider new matter is left to the sound
discretion of the court and the interest of justice. Riley v. State, 825 S.W.2d 699, 700 (Tex.
Crim. App. 1992); Boyle v. State, 820 S.W.2d 122, 141 (Tex. Crim. App. 1991) (op. on reh'g),
cert. denied, 112 S.Ct. 1297 (1992); Rochelle, 791 S.W.2d at 126. The additional points of error
are not properly presented.

 We note that even if properly presented the additional points are without merit. 
See Wilson v. State, 811 S.W.2d 700, 702 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd).
Two of the points concern the "oral" confession which appellant contends was inadmissible. (1) At
the suppression hearing the trial court expressly did not rule upon the admission of the oral
"confession." A defendant is required to pursue an objection until receiving an adverse ruling in
order to preserve error. Ramirez v. State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991);
Norman v. State. 862 S.W.2d 621, 626 (Tex. App.--Tyler 1993, pet. ref'd); Scott v. State, 861
S.W.2d 440, 447 (Tex. App.--Austin 1993, no pet.). This is one of the most important procedural
requirements for preserving error. Fuller v. State, 827 S.W.2d 919, 926 (Tex. Crim. App.
1992). Moreover, appellant did not object to the trial court's failure or refusal to rule at the
suppression hearing in order to preserve error. Tex. R. App. P. 52(a); Ethington v. State, 819
S.W.2d 854, 858 (Tex. Crim. App. 1991). 

 When the oral "confession" was offered at the trial on the merits, appellant objected
only on the basis of "hearsay." Appellant now argues that the oral "confession" was inadmissible
because it did not meet the recordation requirement of the statute. See Tex. Code Crim. Proc.
Ann. art. 38.22, § 3 (West Supp. 1994). A point of error must comport with the objection at trial
or nothing is presented for review. Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App.),
cert. denied, 112 S.Ct. 202 (1991).

 Appellant also contends that the trial court failed to make findings of fact and
conclusions of law concerning the voluntariness of the oral "statement." Even if this contention
is properly presented, it is without merit under the circumstances described. Nothing in article
38.22 precludes the admission of a statement made by an accused "that does not stem from
custodial interrogation, or of a voluntary statement whether or not the result of custodial
interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other
statement that may be admissible under law." Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (West
1979). There is no showing that Felder was a state agent, and a statement from one prisoner to
another in jail is not custodial interrogation. See May v. State, 618 S.W.2d 333, 348 (Tex. Crim.
App. 1981). Even if the voluntary conversation between Felder and appellant was custodial
interrogation, it is observed that appellant testified at the suppression hearing, putting his
credibility in issue. At the trial on the merits, the objection was "hearsay." The issue of
voluntariness was not raised. The trial court was not required to file findings of fact or
conclusions of law as to the "oral" statement. Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West
1979). Appellant misinterprets the abatement order in claiming that this Court ordered the trial
court to file findings as to the oral "statement."

 In another out-of-time point of error, appellant urges that the trial court erred in
failing to sua sponte instruct the jury on the voluntariness of the written confession. In the
absence of evidence before the jury as to the lack of voluntariness, no jury instruction thereon is
required. Wiley v. State, 632 S.W.2d 746, 748 (Tex. Crim. App. 1982). Article 38.22, section
6 of the Texas Code of Criminal Procedure becomes operative only when a question is raised as
to the voluntariness of an accused's confession. Villarreal v. State, 811 S.W.2d 212, 217 (Tex.
App.--Houston [14th Dist.] 1991, no pet.). Some evidence must be presented to the jury that the
confession was not given voluntarily before the issue is raised. Hernandez v. State, 819 S.W.2d
806, 812 (Tex. Crim. App. 1991), cert. denied, 112 S.Ct. 2944 (1992). The State's evidence
before the jury laid the predicate for the admission of the written confession. Such evidence
showed the confession was voluntarily given. Appellant did not testify. He relies upon the
testimony of Dr. Fitzsimmons who testified as to appellant's mental ability. His brief testimony
did not raise the issue of voluntariness. The doctor knew nothing of the circumstances
surrounding the taking of the written confession.

 Furthermore, appellant did not request or object to the omission of the issue of
voluntariness in the charge. Such failure waives all but fundamental error. Jeffcoat v. State, 644
S.W.2d 719, 724 (Tex. Crim. App. 1982); Tyra v. State, 534 S.W.2d 695, 697 (Tex. Crim. App.
1976); Neal v. State, 626 S.W.2d 879, 882 (Tex. App.--San Antonio 1981, pet. ref'd). Under any
circumstances, nonpreserved jury charge error requires great harm to merit reversal. Gibson v.
State, 726 S.W.2d 129, 133 (Tex. Crim. App. 1987) (op. on reh'g); Chunn v. State, 821 S.W.2d
718, 720 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). The harm must be "egregious" and
deny the defendant a fair and impartial trial. Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim.
App. 1987) (op. on reh'g). Following the dictates of Almanza, we have examined the entire
record and do not find the error, if any, was egregious or that appellant was denied a fair and
impartial trial.

 Lastly, appellant claims that he was deprived of the effective assistance of trial
counsel for the sole reason that counsel failed to object to the charge for a lack of an instruction
on voluntariness of the written statement. The two-pronged test of Strickland v. Washington, 466
U.S. 668 (1984), for determining the ineffective assistance of counsel has been adopted in Texas,
at least for the guilt/innocence stage of a criminal trial. Hernandez v. State, 726 S.W.2d 53, 57
(Tex. Crim. App. 1986); Ex parte Cruz, 739 S.W.2d 53, 59 (Tex. Crim. App. 1987). Applying
the two-pronged test, we do not find that counsel's performance was deficient or that any deficient
performance prejudiced the defense so as to deny appellant a fair and impartial trial. The
Strickland standard is judged by the totality of the representation, not by isolated acts or omissions
of trial counsel. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). The
contention is without merit.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Powers, B. A. Smith and Onion*

Affirmed

Filed: June 29, 1994

Do Not Publish













* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   In his written confession, appellant implicated Ricky Felder as his co-defendant. Felder
was arrested, but after an investigation he was released. Upon being released, Felder
immediately asked to talk to appellant. Appellant was in a nearby interview room at the
police station. Felder stood in the doorway of the room and asked why appellant had
involved him. Appellant responded that Johnny Byrd had told him over the telephone to
take the "rap" for the offense, and he believed that because of Felder's long criminal record
the police would accept Felder's participation without question. The police officers
overheard the conversation. This testimony was offered at the suppression hearing. We
assume that this is the "oral" confession to which appellant refers.