Gerald Pieter ZWARST, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–88–00852–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 30, 1989.

J.B. Williamson, LaPorte, for appellant.

Roger L. Ezell, Galveston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

### OPINION

PAUL PRESSLER, Justice.

Appellant was indicted for the felony offense of aggravated kidnapping, TEX. PENAL CODE ANN. § 20.04 (Vernon 1974). Due to pre-trial publicity, the presiding judge in the case ordered a change of venue from Galveston County to Brazos County. After a plea of not guilty, a jury convicted appellant of the offense charged and assessed punishment at life imprisonment. We affirm.

On Memorial day, 1986, a nineteen-year-old woman left her job as a waitress on Galveston Island at about midnight and began driving along Interstate 45 towards her boyfriend's home in Texas City. Shortly before she entered the causeway to the mainland, two men in a Ford pickup truck began to annoy and follow her. Once across the causeway, they ran her car off the road. The two men then left their truck and approached the young woman's car. John Robert King, the co-defendant who is not a party to this appeal, walked up to the vehicle and broke out the driver's

side window with his hand. He then reached into the car, opened the door and forced the young woman from the vehicle. Several eyewitnesses observed the woman's being dragged by her hair and forced into the truck. One passerby stopped to see if King needed any assistance but was told that it was a family problem and to stay out of it. This witness noticed a second man at the scene but was unable to identify him because of the distance and lighting. Additional witnesses saw the young woman fighting to get away and heard her cries for help, but none of the observers immediately reported the incident to the police. The appellant was not specifically identified by any witness as being at the scene. The abducted woman was later determined to be Shelley Sikes, and in spite of a massive investigation, the case remained unsolved for approximately thirteen months.

On the first anniversary of her disappearance, the family of the young woman instituted a media campaign. Because of this publicity, John King moved out of the Galveston County area to El Paso. Shortly after arriving in El Paso, King unsuccessfully tried to commit suicide. When an investigation was made of the suicide, King told the El Paso authorities some of the facts surrounding the abduction of Sikes. He implicated himself and the appellant as the two men who kidnapped, assaulted and later beat the young woman to death with a shovel. King agreed to cooperate with authorities and returned to the Clear Lake area where appellant was living. A recorder was placed on King. He went to appellant's apartment trying to get appellant to talk about the kidnapping and possible location of Sikes' body. King was unsuccessful in this regard, and the Galveston County District Attorney's Office decided to ask appellant to voluntarily speak with the investigators about the case.

Shortly after King left the appellant's apartment, the appellant and his girlfriend drove off. Investigators followed him to the nearby city of LaPorte where he was pulled over by a marked LaPorte police car. Upon approaching the car, the officers drew their guns because appellant had quickly placed his hands under the dashboard. Upon seeing that appellant had no weapon, the officers secured their guns. A sergeant of the Galveston County Sheriff's Department and a Special Agent of the F.B.I. asked appellant if he would come with them and answer some questions. They did not discuss the nature of the questions, but it was made clear that he was not under arrest. Appellant agreed to talk with the officers and freely followed them back to the police station where he was given his rights under TEX.CODE CRIM. PROC.ANN. art. 15.17 (Vernon 1981). He was again told that he was not under arrest.

Appellant later agreed to a video-taped interview and was given his *Miranda* warnings in accordance with TEX.CODE CRIM.PROC.ANN. art. 38.22 § 3(a)(2) (Vernon 1981). Appellant eventually told the officers that he remembered parts of the Memorial Day weekend and that he had helped John King get the girl into the truck. He also stated that he had his foot on her while she was on the floorboard and that he and King had taken her to Spillway Park. This park was a short distance from King's parent's house and was located in an unincorporated area of Galveston County called Bacliff. Appellant's memories of the whole weekend were clouded by his extensive beer drinking and use of marijuana laced with PCP during the two days. During a break taken by the appellant, the investigators filed a sworn probable cause affidavit that charged him with the aggravated kidnapping of Shelley Sikes. An arrest warrant was immediately issued, and when the video interview recommenced, appellant was informed of the charges against him as well as his rights under TEX.CODE CRIM.PROC.ANN. art. 15.17 (Vernon 1981). He made no additional admissions.

The following day appellant agreed to take the officers along the route he and King took after Sikes was abducted. At

the conclusion of this trip, appellant restated his story on an audio tape after being given his rights under TEX.CODE CRIM.PROC.ANN. art. 38.22, § 3(a)(2) (Vernon 1981). Appellant told authorities of how King had kicked the girl down to the truck's floorboard several times during the trip to Spillway Park and that she moaned repeatedly during the trip. Once at the park, King put Sikes in the bed of the pickup and appellant drove to King's parent's home which was a short distance away. At his parent's home, King got a shovel and returned to the truck. The pair then drove to a house rented by King where appellant ate dinner and drank beer. King remained outside the house, and when appellant left the building, his truck was still there but Sikes' body was not in it. Appellant denied to authorities that he had any knowledge of what happened to the girl's body.

Shortly after the abduction of Sikes, appellant was convicted of the offense of driving while intoxicated in Harris County and sentenced to the Texas Department of Corrections. Appellant was on shock probation for that offense when he spoke with authorities about the Sikes disappearance. Former jail inmates of the appellant testified at trial that he had voluntarily told them he had passed out while at the rent house and woke up to find King hitting Sikes over the head with a shovel and burying her alive.

■ In his first point of error, appellant asserts that the trial court erred in admitting into evidence the video and audio tapes of appellant's confession because they were the result of an illegal arrest. The trial court held an extensive pre-trial hearing, in compliance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and TEX.CODE CRIM.PROC.ANN. art. 38.22, Sec. 6 (Vernon 1981), on the issue of whether the confessions contained on the tapes were the product of an illegal arrest. The trial court heard the testimony of five different people including the investigator from the Galveston County Sheriff's De-

partment and the FBI Special Agent who stopped and later questioned appellant and the two inmates from the Galveston County Jail who had spent time with appellant following his arrest on kidnapping charges. The court entered detailed findings of fact relating to this issue, stating in pertinent parts:

(7) Sgt. Kessler was then instructed in a phone conversation with the District Attorney's Office to determine if Defendant would speak to the officers voluntarily, Sgt. Kessler was specifically told not to arrest Defendant;

(8) When Defendant left his residence, Galveston officers had defendant *stopped* by a LaPorte Police Department officer in a marked car; (emphasis added)

(9) As the Officers walked to Defendant's car to tell him that Sgt. Kessler wished to speak with him, two officers saw Defendant put his hands below the dashboard and drew their weapons momentarily. When defendant complied with their request to show his hands, all weapons were holstered;

(10) Sgt. Kessler and FBI Agent Flo Logan explained to defendant that they wanted to discuss a major investigation with him and assured Defendant he was not under arrest. Defendant voluntarily agreed to accompany officers to Galveston County;

(11) Sgt. Kessler would have allowed Defendant to leave had he not voluntarily agreed to come with the officers. During the ride to the North County Building which took approximately 20–25 minutes, there was no discussion concerning the Shelley Sikes matter. Defendant volunteered information to the effect that, "I am not a violent person, and I don't do drugs. I never hurt nobody. I never killed nobody. My brother got killed in a car accident last year."

(12) At approximately 7:07 p.m. on June 26, 1987, Defendant arrived at the North County Building where, before

he entered the building, he was again told he was not under arrest and was free to leave, but Defendant orally stated he wanted to remain and get the matter "straightened out" and voluntarily agreed to stay and talk to officers;

The trial court also filed conclusions of law as follows:

(2) Defendant was not under arrest when stopped by the marked LaPorte police vehicle and voluntarily accompanied Galveston County officers to the North County Building in League City;

(3) That comments made by Defendant to officers during the ride from LaPorte to Galveston County were made while the Defendant was not under arrest, were voluntary, were not the products of custodial interrogation, and are admissible;

(4) That Defendant was free to leave the North County Building in League City, and was not in custody (until charges were filed at approximately 1:15 a.m., June 27, 1987), and Defendant voluntarily agreed to stay and talk to officers;

■ On appeal, challenges to the voluntariness of a confession are directed to whether the trial court abused its discretion in its findings or whether the court properly applied the law to the facts. *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex. Crim.App.1979). The trial judge is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and as such, he may believe or disbelieve all or any part of any witness' testimony. *Hawkins v. State*, 660 S.W.2d 65, 72 (Tex. Crim.App.1983); *Kelly v. State*, 621 S.W.2d 176 (Tex.Crim.App.1981). If the trial court's findings of fact are supported by the record, the only inquiry on appeal is whether the trial court improperly applied the law to the facts. *Burdine v. State*, 719 S.W.2d 309, 318 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Johnson v. State*, 698 S.W.2d 154, 159 (Tex.Crim.App.1985).

Viewing the evidence in the light most favorable to the trial court's ruling, *DeLaRosa v. State*, 658 S.W.2d 162 (Tex.Crim. App.1983), appellant has failed to show an abuse of discretion. The record supports the trial court's findings of facts and conclusions of law. Furthermore, the jury by its verdict implicitly found that appellant voluntarily accompanied the officers to the North County Building. They were instructed to disregard any statements made by the appellant if they found he was illegally arrested. Appellant's point of error number one is overruled.

■ In his second point of error, appellant asserts that the trial court erred by admitting into evidence the appellant's video and audio taped confessions because they were involuntary and the result of mental and physical coercion. The trial court's relevant findings of fact are as follows:

(13) At 7:55 p.m. on June 26, 1987, Defendant was advised by Judge M.W. Nelson, Judge of Precinct #4 of Galveston County, that he was under investigation for aggravated kidnapping and was given his statutory warnings under Art. 15.17, TEX.CODE CRIM.PROC. ANN. Defendant signed the written warning form (State's Exhibit #2) and indicated he understood all of his rights;

(14) A video interview (State's Exhibit #3) began at 8:43 p.m. on June 26, 1987, with Sgt. Kessler again orally advising Defendant of his rights and Defendant waiving his rights and participating in the interview.

The interview continued until 11:08 p.m. A break was taken from 11:08 p.m. until 11:34 p.m. during which no questioning occurred. The interview resumed at 11:34 p.m. and continued until 12:47 a.m. At 12:47 a.m. Defendant was given food and drink and allowed to relax until 1:03 a.m.

(18) Defendant requested and was allowed to make a phone call to his mother at approximately 1:19 a.m.;

(19) Following the telephone call, Sgt. Kessler resumed the interview with Defendant at approximately 1:26 a.m. and concluded the interview at 1:46 a.m.;

(25) On June 27, 1987, Defendant was in the Galveston County Jail, Cell 2H, with Michael Anthony Collins and Daniel R. Moran. Defendant voluntarily told Collins and Moran about his participation in the abduction of Shelley Sikes, including the hitting of Ms. Sikes with a shovel and her burial by John King.

The trial court's conclusions of law relevant to this issue are as follows:

(5) That Defendant understood the warnings given to him at 7:55 p.m. on June 26, 1987, by Judge Nelson as a person under investigation, and voluntarily, knowingly, intelligently and voluntarily agreed to talk to Galveston County Officers;

(10) That Defendant was never physically or mentally coerced or abused in any way to induce any oral or written statement or waiver and that he never expressed any objection, lack of understanding, or question in regard to any procedure, advise (sic) of rights, or warnings.

(11) That any oral statements made by Defendant to Michael Anthony Collins or Daniel R. Moran in the Galveston County Jail were made voluntarily by Defendant, that Collins and Moran were not law enforcement agents nor were they engaging Defendant in any conversation at the request of any law enforcement officials, and that such conversations with the inmates are admissible.

■ Determination of whether a confession is voluntary must be based on an examination of the totality of the surrounding circumstances. *Barney v. State,* 698 S.W.2d 114 (Tex.Crim.App.1985); *Armstrong v. State,* 718 S.W.2d 686 (Tex.Crim. App.1985). The trial judge's findings and conclusions at the *Jackson v. Denno* hearing clearly indicate that the appellant was allowed to eat, drink, smoke and rest several times during the interview process. Furthermore, during the appellant's audio taped interview of June 27, 1987, he acknowledged that he had not been promised anything or coerced in any way to give his statement to the officers and that he had had adequate sleep. The trial judge did not abuse his discretion in finding that the appellant was not mentally or physically coerced. *Sinegal v. State, supra; Johnson v. State, supra.*

In addition to the trial court's determination, the voluntariness of the appellant's confession was also reviewed by the jury in accordance with Tex.Code Crim.Proc.Ann. art. 38.22, Sec. 6 (Vernon 1981). The jury was instructed as follows:

if they found that the appellant was

"questioned persistently over a prolonged period of time without allowing him sufficient sleep or rest or drink or food or without allowing him to contact his family, attorney, or any other relative then the alleged statement(s) is (are) entirely withdrawn from your consideration ...".

The jury was also instructed that if they found or had a reasonable doubt that appellant was "coerced or threatened" by any officer that they should likewise disregard the statement. Through their verdict, the jury found appellant's confessions were voluntary. Appellant's point of error number two is overruled.

The judgment of the trial court is affirmed.