John Terry KING, Appellant,

v.

STATE of Texas, Appellee.

No. C14–91–00402–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 28, 1992.

David Cunningham, Houston, for appellant.

Mary Lou Keel, Houston, for appellee.

Before JUNELL, PRESSLER and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Appellant was charged with four counts of arson. He entered a plea of no contest to one count. The trial court sentenced him to five years confinement and granted the State's motion to dismiss the remaining three counts. In ten points of error, appellant challenges the admissibility of his confession due to his mental retardation. We affirm.

On July 18, 1990, Ricky King, Mount Houston Fire Department Chief, telephoned Richard Bailey, Chief Arson Investigator for the Harris County Fire Marshal's Office and discussed bringing in appellant, Chief King's brother, to talk about a fire. Appellant was a volunteer fireman for the Mount Houston Fire Department. At 6 p.m., appellant and Chief King arrived at Bailey's office and Bailey advised appellant of his constitutional rights. When Bailey asked appellant if he understood these rights, appellant replied yes. Bailey asked appellant about a particular fire and appellant admitted his participation in starting the fire. Bailey began taking notes and Chief King left the office and sat in the waiting room. Bailey also questioned appellant about other fires in that area. Bailey explained that it would be easier to talk about all the fires at one time rather than requiring him to file additional charges at a later date. Since appellant could not remember the correct addresses of the other fires, he offered to take Bailey to the sites. At approximately 8:15 p.m., Bailey and appellant drove around while appellant pinpointed the locations where he had set fires.

Afterwards, appellant asked to talk to Chief King and Bailey drove him to the Mount Houston fire station. Around 9:50 p.m., Chief King came out to the car and spoke to appellant for around 15 minutes. When appellant mentioned he was hungry, Bailey stopped at a fried chicken restaurant. They ate the food in the fire marshall's break room and then Bailey finished writing up appellant's written statement. Around 12:30 a.m., a secretary typed up appellant's statement from Bailey's handwritten notes.

Around 2 a.m., Bailey took appellant to the District Attorney's Intake Division and spoke to Assistant District Attorney Joe Owmby. Bailey explained that he needed to find a magistrate to read the confession to appellant because appellant could not read and had not signed the confession. Owmby suggested he read the statement to appellant to guarantee that appellant understood the contents of his statement and that his statement was voluntary. Owmby tape recorded the entire conversation with appellant. As Owmby reviewed each *Miranda* warning with appellant, he indicated he understood each of his rights and waived them. Appellant then placed his initials at the end of each confession page and signed the confession with his full name, "John Terry King."

In ten points of error, appellant disputes the admissibility of his confession. In the first two points of error, appellant alleges his statement violates his right against self-incrimination guaranteed by the U.S. and Texas Constitutions. In his third and fourth points of error, he contends his statement obstructs his right to due process and due course of law as guaran-

teed by the U.S. and Texas Constitutions. Appellant, in points of error five and six, claims his statement violates his rights under the "totality of the circumstances" test as established by the U.S. and Texas Constitutions. Next, he complains that the admission of his statement violates articles 38.21 and 38.22 of the Texas Code of Criminal Procedure. In his last two points of error, he contends he did not freely, intelligently and voluntarily waive his rights due to his mental retardation. Appellant groups the first eight points of error together by acknowledging that the argument is essentially the same. Although he claims that the waiver question is distinct from the other issues, we fail to see any notable difference as each point of error pertains to the admissibility of his confession. Therefore, we will treat all his points of error together in our analysis.

The trial court held a pre-trial hearing on January 22, 1991, in compliance with *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and TEX.CODE CRIM. PROC.ANN. art. 38.22, section 6 (Vernon 1979), to determine whether appellant's confession was voluntary. Besides hearing the testimony of Bailey and Owmby, the trial court listened to the testimony of Dots Carter, appellant's special education teacher, James Gaskin, a volunteer fireman, and three members of appellant's family. On October 18, 1991, the court entered detailed findings of fact which state in pertinent part:

8. Prior to and during the making of the above statement (admitted into evidence as State's exhibit 1–A), the defendant knowingly, intelligently and voluntarily waived his constitutional rights and voluntarily, knowingly and understandingly made State's exhibit 1–A.

10. Owmby read the defendant's statement to the defendant. Owmby began by reading the defendant's rights (contained in Article 38.22, Section 2(a) of the Texas Code of Criminal Procedure). After each right, the defendant indicated to Owmby that the defendant fully understood the right. There was nothing that the defendant did that indicated that the defendant did not understand his rights.

After reading the rights listed on State's exhibit 1–A, the defendant indicated to Owmby that the defendant wanted to waive his rights. There was nothing that the defendant did that indicated to Owmby that the defendant did not knowingly and intelligently waive his rights.

14. At all times during Owmby's contact with the defendant, the defendant appeared mentally capable of understanding Owmby. Owmby noted that the defendant's responses were appropriate, that the defendant understood what the situation was, and that the defendant had a clear understanding of everything that was going on that night.

The trial court's conclusions of law relevant to this issue are as follows:

1. The defendant made State's exhibit 1–A after the defendant knowingly, intelligently and voluntarily waived his right to remain silent and his right to counsel as required in Article 38.22 Section 2(a) of the Texas Code of Criminal Procedure.

2. State's exhibit 1–A was not made by the defendant as a result of any promises or coercion.

5. This court therefore denied defendant's Motion to Suppress his statements.

At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). On appeal, the appellate court does not engage in its own factual review, but decides whether the trial judge's fact findings are supported by the record. *Id.* (footnote omitted). If the trial court's findings of fact are supported by the record, the only inquiry on appeal is whether the trial court improperly applied the law to the facts. *Zwarst v. State*, 782 S.W.2d 906, 909 (Tex. App.—Houston [14th Dist.] 1989, no pet.). Upon review, the evidence adduced at the suppression hearing is viewed in the light most favorable to the trial court's ruling in determining whether the trial court abused its discretion. *Walker v. State*, 588 S.W.2d 920, 924 (Tex.Crim.App.1989); *Dotson v. State*, 785 S.W.2d 848, 851 (Tex.App.— Houston [14th Dist.] 1990, pet. ref'd).

■ Determination of whether a confession is voluntary must be based on examination of the totality of the surrounding circumstances. *Barney v. State*, 698 S.W.2d 114 (Tex.Crim.App.1985); *Zwarst*, 782 S.W.2d at 910. Relevant circumstances to evaluate if a defendant's will has been overborne include:

[L]ength of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality ... A defendant's characteristics and status, as well as the conduct of the police, are important concerns.

*Armstrong v. State*, 718 S.W.2d 686, 693 (Tex.Crim.App.1985).

■ Here, we need to ascertain whether the circumstances were sufficient to render appellant's confession involuntary. Appellant contends his mental retardation precluded him from comprehending the consequences of his affirmative responses to Bailey and Owmby that he understood and waived his rights. He notes there is nothing in the record to convey he has ever been arrested or had any prior experience with law enforcement interrogation. Since appellant did not testify, he argues that the trial court had no opportunity to assess his demeanor and credibility. Finally, he complains that Bailey deliberately circumvented his goal of finding a magistrate to warn appellant of his rights by acceding to Owmby's decision to tape record the interview and read the statement to appellant instead.

The record reveals conflicting evidence on the severity of appellant's mental retardation. Appellant concedes he provided no expert testimony from a psychiatrist or psychologist to indicate he was incapable of understanding the implications of the warnings. Although appellant's special education teacher testified about the extent of appellant's mental deficiency, she admitted she was not qualified to administer IQ tests. Appellant's family testified that his drastic mental deficiency hindered him from concentrating on simple tasks or remembering past events. However, Dr.

Jaime Ganc, a court-appointed psychiatrist, conducted a competency evaluation of appellant before the hearing. The evaluation provided in part:

Mr. King discussed the charges of Arson of a Building and Habitation as well as the circumstances leading up to his arrest in a logical, coherent, and relevant fashion.

Mr. King discussed his past and present personal history ... He comes from a complete family ... Although he quit school when he was coursing the 8th grade, they accepted his work as part of his school and graduated him. He states he can not [sic] read and write and always has had problems with his academic work. He has done painting, forklift operating and has been a security for Mustang Security Company. He married his first wife when he was 23 years of age. His marriage lasted less than [sic] a year. He has been out of this marriage. When he was around 25, he married his second wife and this marriage lasted about three years. He has a child age 4 out of this marriage ...

Mr. King states that he started drinking when he was around 17. He drinks about a case or more of beer a day. He also states that when he gets drunk he can get into fights quite easily ...

Mr. King states that his court appointed lawyer is "Mr. Patkelly." He discussed his functions as well as discussing the role of the judge, the jury, and the D.A. He appeared to have sufficient understanding of the criminal justice system.

MENTAL STATUS:

Mr. King is an adult who appears to be in good physical health. He is clean, cooperative and alert. He expresses himself in a logical, coherent and relevant fashion ... He was oriented to person, place and time. His cognitive functioning was intact.

CONCLUSION:

Mr. King has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and has a rational as well as a factual understanding of the proceedings against him. He is therefore COMPETENT to stand trial.

Other evidence supporting the trial court's finding of voluntariness includes the fact that appellant came to Bailey's office of his own free will. During the interrogation with Bailey, appellant was taken to see his brother when he asked to speak with him and was provided food. Bailey and Owmby testified that appellant confessed of his own volition. Both immediately informed appellant of his rights before questioning him. In fact, Owmby purposely read appellant's *Miranda* rights and his statement aloud to appellant to ensure that he waived his rights voluntarily and totally understood his confession. Appellant even corrected his statement to accurately reflect the number of girls in the car during one of the arson offenses. The trial court also listened to the tape recording of Owmby's conversation with appellant before rendering its decision.

Balancing the above factors, we find the trial court did not abuse its discretion by concluding that appellant intelligently and voluntarily waived his constitutional rights and gave his confession. While an appellant's limited intelligence is a factor to be considered, that alone does not mandate a finding of involuntariness of a confession as a matter of law. *See Smith v. State*, 779 S.W.2d 417, 428–429 (Tex.Crim.App.1989). A confession is not inadmissible merely because the accused, who is not claimed to be insane, is of less than normal intelligence. *Rodriquez v. State*, 666 S.W.2d 305, 313 (Tex.App.—San Antonio 1984, no pet.). Notwithstanding the fact that appellant is of low mentality, we cannot find, as a matter of law, that this factor precluded him from knowingly, intelligently and voluntarily waiving his rights and providing his confession. Viewing the totality of the circumstances, we find that the record supports the trial court's ruling, and we will not disturb it on appeal. We overrule appellant's ten points of error.

We affirm the trial court's judgment.