NO. 07-02-0246-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 1, 2003

_____


JOHN HELTON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 13,970-B; HONORABLE JOHN B. BOARD, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

**OPINION**

Following appellant John Helton's plea of not guilty in a bench trial, the trial court found him guilty of the offense of injury to a child and sentenced him to life in prison. By this appeal, appellant contends: (1) the evidence is legally and factually insufficient to support the conviction; and the trial court abused its discretion in (2) denying the motion

to suppress his oral and written statements; and (3) sentencing him to life imprisonment in violation of the Eighth Amendment of the United States Constitution. Based upon the rationale expressed herein, we affirm.

On August 24, 2001, emergency personnel transported appellant's daughter, the two month old victim, to the hospital after appellant reported she was having difficulty breathing. Upon discovering the victim had a severe subdural hematoma, two linear skull fractures, retinal hemorrhages and a broken rib, doctors diagnosed her condition as Shaken Baby Syndrome. The victim's physicians informed police that Shaken Baby Syndrome results from "non-accidental trauma."

Initially, appellant denied any knowledge of the origin of the victim's injuries. A couple of weeks after the victim was hospitalized, however, appellant provided police with a written statement in which he admitted he "shook her [the victim] hard and her head hit the doorframe of the bathroom door." Appellant explained he had "never been that mad in [his] life," and he "just snapped." In addition to the written statement, appellant also made oral statements of varying degrees of incrimination to law enforcement personnel.

In a motion to suppress his oral and written confessions, appellant alleged his statements were involuntary and taken in violation of his Sixth Amendment right to counsel. At a hearing on the motion, Detective Higley, a polygraph examiner, testified appellant voluntarily transported himself to the Amarillo Police Department for the purpose

2

of undergoing a polygraph examination. Detective Higley told the court appellant was not under arrest at the time he arrived at the police department, and he never placed appellant under arrest. Detective Higley maintained appellant was free to leave the police department at any time. Additionally, he testified he informed appellant of his *Miranda*[1] rights as they appeared on the top of a form entitled "Amarillo Police Department Polygraph Examination Warning." Appellant acknowledged his understanding of those rights by signing the form. Then, according to Detective Higley, appellant submitted to a polygraph examination. Following the exam, Detective Higley engaged in a conversation with appellant, in which appellant admitted shaking the victim "hard." After the conversation, Detective Higley escorted appellant to an interrogation room at the police department where they were met by Sergeant Jones. Detective Higley testified appellant left the police station at the conclusion of his interview with Sergeant Jones. Child Protective Services employee Shannon Burch testified she observed Detective Higley administer the polygraph examination to appellant. Her testimony was consistent with that of Detective Higley.

Sergeant Jones also testified at the hearing on the motion to suppress appellant's statements. According to him, appellant was not under arrest at the time of the interview and was free to leave at any time. Sergeant Jones averred that, not long after arriving at the interrogation room, appellant admitted, "I did it." Prior to the interview, Sergeant Jones

---

[1]*See* Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

apprised appellant of his statutory and constitutional rights by reading those rights as they appeared on the top of a form entitled "Statement." During the interview, which began at 3:10 p.m. and concluded at 3:45 p.m., Sergeant Jones prepared in his own handwriting a statement based upon appellant's oral statements. Sergeant Jones testified he did not threaten appellant nor make any promises of leniency in exchange for appellant providing a statement. Finally, Sergeant Jones testified that after he finished writing the statement, appellant read it, made corrections to it, and signed it, then left the police station on his own. In addition to Sergeant Jones, Child Protective Services employee Phillip Houlihan was present during appellant's interview. Houlihan's testimony at the suppression hearing mirrors that of Sergeant Jones.

Appellant testified at the suppression hearing that he arrived at the police department on September 13, 2001, between 12:45 p.m. and 12:50 p.m., in time for his polygraph examination scheduled for 1:00 p.m. Appellant claimed he made no incriminating admissions to Detective Higley. He also could not remember Detective Higley reading to him the warnings contained on the Polygraph Examination Warning form. Moreover, appellant claimed that following the polygraph examination, Detective Higley squeezed his knee so forcefully the officer left red marks on his skin. Appellant testified, "he [Detective Higley] was wanting me to confess." With respect to the written statement that was attributed to him, appellant denied knowing its contents, and claimed he signed the document to protect his family. Finally, appellant averred he requested the assistance

4

of an attorney during his interview with Sergeant Jones, but that Jones "said it was too late." At the conclusion of the hearing, the trial court found appellant's oral and written statements were knowing and voluntary and not the product of custodial interrogation. The trial court reduced those findings to written findings of fact and conclusions of law.

Concluding the sufficiency of the evidence turns upon the propriety of the trial court's ruling on the motion to suppress the written and oral statements, we initially address appellant's third point of error. By that point, appellant specifically contends the trial court abused its discretion by denying the motion to suppress because his oral and written statements were involuntary. We disagree.

The standard of review for the trial court's ruling on a motion to suppress is abuse of discretion. *See* Oles v. State, 993 S.W.2d 103, 106 (Tex.Cr.App. 1999). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex.Cr.App. 2000). Thus, the trial court is entitled to believe any or all of a witness's testimony. *Id.* The evidence should be viewed in the light most favorable to the trial court's ruling. *See* State v. Ballard, 987 S.W.2d 889, 891 (Tex.Cr.App. 1999). Moreover, we should afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact findings are based upon an evaluation of the witness' credibility and demeanor. *Ross*, 32 S.W.3d at 856 (*citing* Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App. 1997)).

5

Voluntary, noncustodial statements are exempt from the requirements of *Miranda* and article 38.22 of the Code of Criminal Procedure. *Cf*. Holland v. State, 770 S.W.2d 56, 58 (Tex.App.–Austin 1989), *aff'd*, 802 S.W.2d 696 (Tex.Cr.App. 1991). Therefore, we begin our analysis with the trial court's finding that appellant's statements were not the product of custodial interrogation.

Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way. Cannon v. State, 691 S.W.2d 664, 671 (Tex.Cr.App. 1985) (citing Miranda v Arizona, 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966). In determining whether an individual was in custody, the court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there was a formal arrest or restraint of movement of the degree associated with formal arrest." California v. Behler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983).

The Court of Criminal Appeals has outlined some general situations that may constitute custody, including the following: (1) when the suspect is physically deprived of his or her freedom of action in any significant way; (2) when a law enforcement officer tells the suspect he or she cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe his or her freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he or she is free to leave. Dowthitt v. State, 931 S.W.2d

6

244, 255 (Tex.Cr.App. 1996). In short, we must look at the totality of the circumstances and determine whether appellant's freedom of movement was restrained to a degree associated with a formal arrest. *See* Rathbun v. State, 96 S.W.3d 563, 566 (Tex.App.–Texarkana 2002, no pet.).

Having conducted a thorough review of the record, we find present none of the situations delineated above in the events leading to appellant's written and oral statements on September 13, 2001. Indeed, appellant voluntarily transported himself to the police station on September 13, 2001, he was never placed under arrest prior to or on that date, and he was free to, and, in fact, did, leave the station following the polygraph examination and interview. Moreover, there is no evidence officers restricted appellant's movements at the police station. We conclude a reasonable person in appellant's position would not have believed he was restrained to the degree associated with formal arrest.

Nothwithstanding the lack of custodial interrogation, appellant maintains his statements were not voluntary.[2] Appellant claims the following circumstances rendered the statements involuntary: (1) law enforcement officers failed to visually or aurally record them; (2) Detective Higley squeezed his knee during their conversation; (3) Detective Higley "pressed" him into giving a statement after he began to hyperventilate; (4) Sergeant Jones denied him the opportunity to complete his own written statement; (5) appellant did

---

[2]Under the circumstances presented in this case, we assume without deciding that a statement not the product of custodial interrogation may still be involuntary.

7

not inital any of the *Miranda* warnings; and (6) he was denied the right to counsel during the interview with law enforcement.

In reviewing the voluntariness of a confession, we look at the totality of the circumstances. *See* Barefield v. State, 784 S.W.2d 38, 41 (Tex.Cr.App. 1989). Relevant circumstances to evaluate if a defendant's will has been overborne include:

> [L]ength of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality . . . [and] a defendant's characteristics and status, as well as the conduct of the police.

*See* King v. State, 831 S.W.2d 891, 894 (Tex.App.–Houston [14th] Dist. 1992, no pet.) (*citing* Armstrong v. State, 718 S.W.2d 686, 693 (Tex.Cr.App. 1985)).

After examining the relevant circumstances in this case, we find no error in the trial court's conclusion that appellant's statements were knowing and voluntary. Assuming without deciding that appellant was "detained" at the police station, we find the length of detention was not undue. Indeed, the record reveals appellant arrived at the police station at approximately 12:45 p.m. for a 1:00 scheduled polygraph examination and left shortly after completing a written statement at 3:45 p.m. Further, the preparation of the statement lasted a mere 35 minutes. Moreover, there is no evidence in the record to establish that any of appellant's family members were denied access to him or that police exercised physical brutality during their contact with appellant. And while appellant testified he

8

requested an attorney, three other witnesses to the events of September 13, 2001 averred no such request was made. Finally, with respect to appellant's hyperventilation episode, the record reveals Detective Higley asked appellant not once, but twice, if he desired an ambulance. On both occasions, appellant denied such assistance and appeared to "calm down."

Moreover, as noted above, appellant's statements were not the product of custodial interrogation; therefore, the requirement that statements be visually or aurally recorded does not apply. *See generally* Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2003). In addition, nothing in the Code of Criminal Procedure requires even individuals who are in custody to initial each of the *Miranda* warnings on a statement form. Nor does the Code prohibit a police officer from preparing in his own handwriting a statement based upon the oral statements of a suspect. Finally, though appellant makes much ado about Detective Higley squeezing his knee during their conversation, other witnesses testified that Higley merely patted appellant's knee in an apparent effort to console him.

In addition, other factors surrounding the taking of appellant's statement support a finding that it was voluntary. Detective Higley, Sergeant Jones, and CPS employees Phillip Houlihan and Shannon Burch each testified that appellant came to the police station on his own. He was never handcuffed, never told that he was under arrest, or never told that he was not free to leave. He was not denied any basic necessities, and was not promised anything in exchange for his statement. In short, except for appellant's

9

assertions that he was "pressed" into giving a statement and denied the right to counsel, there is no evidence his statement was involuntary. And, the determination of whether appellant was "pressed" into giving a statement or denied the right to counsel was a determination for the trial court to make based upon an evaluation of the credibility and demeanor of the witnesses. *See* Loserth v. State, 963 S.W.2d 770, 773 (Tex.Cr.App. 1998).

At oral arguments, appellant urged this Court to hold that if a criminal defendant is subject to the death penalty or life imprisonment, and law enforcement has the capability to visually or aurally record his statement, it must do so before the statements will be admissible at trial against him. According to appellant, the foregoing procedure is the only reliable method for testing the voluntariness of a criminal defendant's statement. While such a procedure may be advisable, appellant does not cite, and we have been unable to find, any cases imposing the requirement on law enforcement. We decline appellant's invitation to create a new rule of law. Appellant's third point of error is overruleld.

By his first and second points of error, appellant claims the evidence is legally and factually insufficient to support his conviction. We disagree. Evidence is legally insufficient if, viewed in the light most favorable to the prosecution, no rational jury could find the defendant guilty beyond a reasonable doubt. Bustamante v. State, No. 74, 079, 2003 Tex. Crim. App. Lexis 103 (Tex.Cr.App. June 4, 2003) (*citing* Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)). Evidence is factually

10

insufficient if, viewed without the prism of "the light most favorable to the verdict," the evidence supporting the verdict is so weak or so against the overwhelming weight of contrary evidence as to render the verdict clearly wrong and manifestly unjust. *Id.* (*citing* Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000)).

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove.  A person commits the offense of injury to a child, *inter alia*, if he intentionally or knowingly, by act, causes serious bodily injury to a child 14 years of age or younger. Tex. Pen. Code Ann. § 22.04(a)(1) (Vernon 2003).  Here, it is undisputed that the two-month old victim suffered serious bodily injury.  Having found appellant's written and oral confessions to have been properly admitted, we conclude there is evidence from which a rational trier of fact could have found beyond a reasonable doubt that appellant caused the injury.  As a result, we conclude the evidence is legally sufficient to support the trial court's finding that appellant committed the offense of injury to a child.

Next, we consider the factual sufficiency of the evidence to support appellant's conviction.  The crux of appellant's argument under this point is that the two-month old victim was readmitted to the hospital on two occasions after he was incarcerated for causing the August 24, 2001 injury.  Because the victim continued to suffer injuries after he was denied access to her, it follows, claims appellant, that another individual caused the original injury.  We disagree.

11

Even if the victim was subjected to subsequent shaking incidents after the August 24, 2001 episode, appellant may still be held criminally responsible for the original injury.[3] This is so because his statement corroborates the medical evidence elicited at trial. The neurosurgeon who treated the victim during her August 24, 2001 admission, Dr. Banister, testified that the victim's injuries were caused by someone shaking her, then hitting her head against a hard object. After reviewing appellant's written statement, Dr. Banister agreed appellant's actions were consistent with the mechanism of the victim's injuries. Furthermore, two other physicians testified that the victim's injuries were consistent with the mechanism of injury described by appellant. With respect to the timing of the victim's injuries, appellant explained in his written statement that the shaking and impact episode occurred at approximately 8:30 p.m. on August 24, 2001. He also acknowledged he had sole access to the victim from 6:15 p.m.or 6:20 until he reported his daughter's symptoms to emergency personnel. Based upon the CT scan that was performed upon the victim at approximately 10:45 that evening, Dr. Banister opined that the injury occurred about two hours earlier. Having conducted a neutral review of all of the evidence, both for and

---

[3]The medical testimony at trial was copious. While it is undisputed appellant had no access to the victim after September of 2001, he vehemently challenged the medical evidence. The record reveals the victim was admitted to the hospital in November of 2001, and again in December. Appellant claimed the subsequent admissions were the result of additional shaking episodes. In contrast, the State maintained the victim, who was more susceptible to head injury because of the previous trauma, merely suffered re-bleeds from the original injury. Because we decide appellant's written statement is legally and factually sufficient to support his conviction for causing the victim serious bodily injury on August 24, 2001, we need not review the trial court's resolution of that conflicting evidence.

12

against the finding of guilt, we conclude the proof of guilt is not so obviously weak as to undermine our confidence in the factfinder's determination. Johnson v. State, 23 S.W.3d at 11. Neither do we find that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof or is clearly wrong and unjust. *See* Ortiz v. State, 93 S.W.3d 79, 87 (Tex.Cr.App. 2002). As a result, appellant's first and second points of error are overruled.

By his fourth point of error, appellant maintains the trial court abused its discretion in sentencing him to life imprisonment in violation of the Eighth Amendment of the United States Constitution. Specifically, appellant claims the life sentence is grossly disproportionate to the offense for which he was tried. We disagree.

Texas courts have traditionally held that as long as the punishment is within the range of punishment established by the Legislature in a valid statute, the punishment assessed does not violate either the federal or Texas prohibitions against cruel and unusual punishment. *See* Jordan v. State, 495 S.W.2d 949, 952 (Tex.Cr.App. 1973); Samuel v. State, 477 S.W.2d 611, 614 (Tex.Cr.App. 1972); Rodriguez v. State, 917 S.W.2d 90, 92 (Tex.App.–Amarillo 1996, pet. ref'd); Robinson v. State, 906 S.W.2d 534, 536 (Tex.App.–Tyler 1995, no pet.). The trial court's assessment of life imprisonment was within the range of punishment authorized by the Legislature. *See* Tex. Pen. Code Ann. § 12.32(a).

Moreover, because appellant did not object in the trial court to the alleged disproportionality of the sentence, his fourth point of error presents nothing for our review. *See* Solis v. State, 945 S.W.2d 300, 301 (Tex.App.–Houston [1st Dist.] 1997, pet. ref'd). Appellant's fourth point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis<br>
Justice

*Do not publish.*