NO. 07-07-0124-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 3, 2007


 ______________________________



IN THE INTEREST OF M.E.R. AND Z.C.R., CHILDREN


_________________________________



FROM THE 64TH DISTRICT COURT OF HALE COUNTY;



NO. 8901A24508; HONORABLE ROBERT W. KINKAID, JR., JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION 


 Paul McDaniel, father of M.E.R. and Z.C.R., filed notice of appeal from an order
confirming a child support arrearage. The trial court clerk's record was filed in this Court
on June 7, 2007. A reporter's record was never filed. By letter of June 21, 2007, this Court
directed McDaniel to certify by July 2, 2007, that he had requested and made satisfactory
payment arrangements for the reporter's record. The letter contained notice that failure
to comply might result in the Court setting the deadline for his brief. Tex. R. App. P.
37.3(c). McDaniel made no response. By letter of July 19, 2007, this Court notified
McDaniel that his appellate brief was due August 23, 2007. On July 23, 2007, this Court
received a letter from McDaniel, briefly arguing why he should be excused from paying the
child support arrearage confirmed by the trial court. By letter of July 30, 2007, this Court
notified McDaniel that his letter, if intended as an appellate brief, did not comply with the
rules of appellate procedure, and reminded him that his brief was due August 23. Tex. R.
App. P. 38.1. A copy of Rule 38.1 was included in this correspondence. McDaniel filed
no additional documents. By letter of September 10, 2007, this Court notified him that his
appeal was subject to dismissal for want of prosecution unless his brief was filed, along
with a motion for extension of time, by September 20, 2007. Again, McDaniel made no
response.

 An appellate court may dismiss an appeal for want of prosecution if an appellant
fails to timely file a brief unless the appellant reasonably explains the failure and the
appellee is not significantly injured by the failure. Tex. R. App. P. 38.1(a)(1). On its own
motion, with ten days notice to the parties, an appellate court may dismiss an appeal for
want of prosecution or failure to comply with a notice from the clerk requiring a response
or other action within a specified time. Tex. R. App. P. 42.3(b),(c). Here the record reveals
appellant McDaniel has not timely filed a brief and has given us no reason for his failure
to do so, despite notice requiring its filing by a specified date. We further find the Court
has given the parties the required ten days notice. 

 Accordingly, we now dismiss McDaniel's appeal for want of prosecution and failure
to comply with a directive of the Court. See Tex. R. App. P. 38.8(a)(1); 42.3(b),(c).


 James T. Campbell 

 Justice

 



lygraph examination. Following the exam, Detective Higley engaged in a conversation
with appellant, in which appellant admitted shaking the victim "hard." After the
conversation, Detective Higley escorted appellant to an interrogation room at the police
department where they were met by Sergeant Jones. Detective Higley testified appellant
left the police station at the conclusion of his interview with Sergeant Jones. Child
Protective Services employee Shannon Burch testified she observed Detective Higley
administer the polygraph examination to appellant. Her testimony was consistent with that
of Detective Higley.

 Sergeant Jones also testified at the hearing on the motion to suppress appellant's
statements. According to him, appellant was not under arrest at the time of the interview
and was free to leave at any time. Sergeant Jones averred that, not long after arriving at
the interrogation room, appellant admitted, "I did it." Prior to the interview, Sergeant Jones
apprised appellant of his statutory and constitutional rights by reading those rights as they
appeared on the top of a form entitled "Statement." During the interview, which began at
3:10 p.m. and concluded at 3:45 p.m., Sergeant Jones prepared in his own handwriting a
statement based upon appellant's oral statements. Sergeant Jones testified he did not
threaten appellant nor make any promises of leniency in exchange for appellant providing
a statement. Finally, Sergeant Jones testified that after he finished writing the statement,
appellant read it, made corrections to it, and signed it, then left the police station on his
own. In addition to Sergeant Jones, Child Protective Services employee Phillip Houlihan
was present during appellant's interview. Houlihan's testimony at the suppression hearing
mirrors that of Sergeant Jones. 

 Appellant testified at the suppression hearing that he arrived at the police
department on September 13, 2001, between 12:45 p.m. and 12:50 p.m., in time for his
polygraph examination scheduled for 1:00 p.m. Appellant claimed he made no
incriminating admissions to Detective Higley. He also could not remember Detective
Higley reading to him the warnings contained on the Polygraph Examination Warning form. 
Moreover, appellant claimed that following the polygraph examination, Detective Higley
squeezed his knee so forcefully the officer left red marks on his skin. Appellant testified,
"he [Detective Higley] was wanting me to confess." With respect to the written statement
that was attributed to him, appellant denied knowing its contents, and claimed he signed
the document to protect his family. Finally, appellant averred he requested the assistance
of an attorney during his interview with Sergeant Jones, but that Jones "said it was too
late." At the conclusion of the hearing, the trial court found appellant's oral and written
statements were knowing and voluntary and not the product of custodial interrogation. The
trial court reduced those findings to written findings of fact and conclusions of law. 

 Concluding the sufficiency of the evidence turns upon the propriety of the trial
court's ruling on the motion to suppress the written and oral statements, we initially
address appellant's third point of error. By that point, appellant specifically contends the
trial court abused its discretion by denying the motion to suppress because his oral and
written statements were involuntary. We disagree.

 The standard of review for the trial court's ruling on a motion to suppress is abuse
of discretion. See Oles v. State, 993 S.W.2d 103, 106 (Tex.Cr.App. 1999). In a
suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony. State v. Ross, 32 S.W.3d 853, 855
(Tex.Cr.App. 2000). Thus, the trial court is entitled to believe any or all of a witness's
testimony. Id. The evidence should be viewed in the light most favorable to the trial
court's ruling. See State v. Ballard, 987 S.W.2d 889, 891 (Tex.Cr.App. 1999). Moreover,
we should afford almost total deference to the trial court's determination of historical facts
that the record supports, especially when the fact findings are based upon an evaluation
of the witness' credibility and demeanor. Ross, 32 S.W.3d at 856 (citing Guzman v. State,
955 S.W.2d 85, 89 (Tex.Cr.App. 1997)).

 Voluntary, noncustodial statements are exempt from the requirements of Miranda
and article 38.22 of the Code of Criminal Procedure. Cf. Holland v. State, 770 S.W.2d 56,
58 (Tex.App.-Austin 1989), aff'd, 802 S.W.2d 696 (Tex.Cr.App. 1991). Therefore, we
begin our analysis with the trial court's finding that appellant's statements were not the
product of custodial interrogation.

 Custodial interrogation is questioning initiated by law enforcement officers after a
person has been taken into custody or otherwise deprived of his freedom in any significant
way. Cannon v. State, 691 S.W.2d 664, 671 (Tex.Cr.App. 1985) (citing Miranda v Arizona,
384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966). In determining whether an individual
was in custody, the court must examine all of the circumstances surrounding the
interrogation, but "the ultimate inquiry is simply whether there was a formal arrest or
restraint of movement of the degree associated with formal arrest." California v. Behler,
463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983).

 The Court of Criminal Appeals has outlined some general situations that may
constitute custody, including the following: (1) when the suspect is physically deprived of
his or her freedom of action in any significant way; (2) when a law enforcement officer tells
the suspect he or she cannot leave; (3) when law enforcement officers create a situation
that would lead a reasonable person to believe his or her freedom of movement has been
significantly restricted; and (4) when there is probable cause to arrest and law enforcement
officers do not tell the suspect he or she is free to leave. Dowthitt v. State, 931 S.W.2d
244, 255 (Tex.Cr.App. 1996). In short, we must look at the totality of the circumstances
and determine whether appellant's freedom of movement was restrained to a degree
associated with a formal arrest. See Rathbun v. State, 96 S.W.3d 563, 566
(Tex.App.-Texarkana 2002, no pet.).

 Having conducted a thorough review of the record, we find present none of the
situations delineated above in the events leading to appellant's written and oral statements
on September 13, 2001. Indeed, appellant voluntarily transported himself to the police
station on September 13, 2001, he was never placed under arrest prior to or on that date,
and he was free to, and, in fact, did, leave the station following the polygraph examination
and interview. Moreover, there is no evidence officers restricted appellant's movements
at the police station. We conclude a reasonable person in appellant's position would not
have believed he was restrained to the degree associated with formal arrest.

 Nothwithstanding the lack of custodial interrogation, appellant maintains his
statements were not voluntary. (2) Appellant claims the following circumstances rendered
the statements involuntary: (1) law enforcement officers failed to visually or aurally record
them; (2) Detective Higley squeezed his knee during their conversation; (3) Detective
Higley "pressed" him into giving a statement after he began to hyperventilate; (4) Sergeant
Jones denied him the opportunity to complete his own written statement; (5) appellant did
not inital any of the Miranda warnings; and (6) he was denied the right to counsel during
the interview with law enforcement.

 In reviewing the voluntariness of a confession, we look at the totality of the
circumstances. See Barefield v. State, 784 S.W.2d 38, 41 (Tex.Cr.App. 1989). Relevant
circumstances to evaluate if a defendant's will has been overborne include:

 [L]ength of detention, incommunicado or prolonged interrogation, denying
a family access to a defendant, refusing a defendant's request to telephone
a lawyer or family, and physical brutality . . . [and] a defendant's
characteristics and status, as well as the conduct of the police.


See King v. State, 831 S.W.2d 891, 894 (Tex.App.-Houston [14th] Dist. 1992, no pet.)
(citing Armstrong v. State, 718 S.W.2d 686, 693 (Tex.Cr.App. 1985)). 

 After examining the relevant circumstances in this case, we find no error in the trial
court's conclusion that appellant's statements were knowing and voluntary. Assuming
without deciding that appellant was "detained" at the police station, we find the length of
detention was not undue. Indeed, the record reveals appellant arrived at the police station
at approximately 12:45 p.m. for a 1:00 scheduled polygraph examination and left shortly
after completing a written statement at 3:45 p.m. Further, the preparation of the statement
lasted a mere 35 minutes. Moreover, there is no evidence in the record to establish that
any of appellant's family members were denied access to him or that police exercised
physical brutality during their contact with appellant. And while appellant testified he
requested an attorney, three other witnesses to the events of September 13, 2001 averred
no such request was made. Finally, with respect to appellant's hyperventilation episode,
the record reveals Detective Higley asked appellant not once, but twice, if he desired an
ambulance. On both occasions, appellant denied such assistance and appeared to "calm
down." 

 Moreover, as noted above, appellant's statements were not the product of custodial
interrogation; therefore, the requirement that statements be visually or aurally recorded
does not apply. See generally Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2003). 
In addition, nothing in the Code of Criminal Procedure requires even individuals who are
in custody to initial each of the Miranda warnings on a statement form. Nor does the Code
prohibit a police officer from preparing in his own handwriting a statement based upon the
oral statements of a suspect. Finally, though appellant makes much ado about Detective
Higley squeezing his knee during their conversation, other witnesses testified that Higley
merely patted appellant's knee in an apparent effort to console him. 

 In addition, other factors surrounding the taking of appellant's statement support a
finding that it was voluntary. Detective Higley, Sergeant Jones, and CPS employees
Phillip Houlihan and Shannon Burch each testified that appellant came to the police station
on his own. He was never handcuffed, never told that he was under arrest, or never told
that he was not free to leave. He was not denied any basic necessities, and was not
promised anything in exchange for his statement. In short, except for appellant's
assertions that he was "pressed" into giving a statement and denied the right to counsel,
there is no evidence his statement was involuntary. And, the determination of whether
appellant was "pressed" into giving a statement or denied the right to counsel was a
determination for the trial court to make based upon an evaluation of the credibility and
demeanor of the witnesses. See Loserth v. State, 963 S.W.2d 770, 773 (Tex.Cr.App.
1998). 

 At oral arguments, appellant urged this Court to hold that if a criminal defendant is
subject to the death penalty or life imprisonment, and law enforcement has the capability
to visually or aurally record his statement, it must do so before the statements will be
admissible at trial against him. According to appellant, the foregoing procedure is the only
reliable method for testing the voluntariness of a criminal defendant's statement. While
such a procedure may be advisable, appellant does not cite, and we have been unable to
find, any cases imposing the requirement on law enforcement. We decline appellant's
invitation to create a new rule of law. Appellant's third point of error is overruleld.

 By his first and second points of error, appellant claims the evidence is legally and
factually insufficient to support his conviction. We disagree. Evidence is legally
insufficient if, viewed in the light most favorable to the prosecution, no rational jury could
find the defendant guilty beyond a reasonable doubt. Bustamante v. State, No. 74, 079,
2003 Tex. Crim. App. Lexis 103 (Tex.Cr.App. June 4, 2003) (citing Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)). Evidence is factually
insufficient if, viewed without the prism of "the light most favorable to the verdict," the
evidence supporting the verdict is so weak or so against the overwhelming weight of
contrary evidence as to render the verdict clearly wrong and manifestly unjust. Id. (citing
Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000)). 

 Before determining whether the evidence is legally sufficient to sustain the
conviction, we must review the essential elements the State was required to prove. A
person commits the offense of injury to a child, inter alia, if he intentionally or knowingly,
by act, causes serious bodily injury to a child 14 years of age or younger. Tex. Pen. Code
Ann. § 22.04(a)(1) (Vernon 2003). Here, it is undisputed that the two-month old victim
suffered serious bodily injury. Having found appellant's written and oral confessions to
have been properly admitted, we conclude there is evidence from which a rational trier of
fact could have found beyond a reasonable doubt that appellant caused the injury. As a
result, we conclude the evidence is legally sufficient to support the trial court's finding that
appellant committed the offense of injury to a child.

 Next, we consider the factual sufficiency of the evidence to support appellant's
conviction. The crux of appellant's argument under this point is that the two-month old
victim was readmitted to the hospital on two occasions after he was incarcerated for
causing the August 24, 2001 injury. Because the victim continued to suffer injuries after
he was denied access to her, it follows, claims appellant, that another individual caused
the original injury. We disagree.

 Even if the victim was subjected to subsequent shaking incidents after the August
24, 2001 episode, appellant may still be held criminally responsible for the original injury. (3) 
This is so because his statement corroborates the medical evidence elicited at trial. The
neurosurgeon who treated the victim during her August 24, 2001 admission, Dr. Banister, 
testified that the victim's injuries were caused by someone shaking her, then hitting her
head against a hard object. After reviewing appellant's written statement, Dr. Banister
agreed appellant's actions were consistent with the mechanism of the victim's injuries. 
Furthermore, two other physicians testified that the victim's injuries were consistent with
the mechanism of injury described by appellant. With respect to the timing of the victim's
injuries, appellant explained in his written statement that the shaking and impact episode
occurred at approximately 8:30 p.m. on August 24, 2001. He also acknowledged he had
sole access to the victim from 6:15 p.m.or 6:20 until he reported his daughter's symptoms
to emergency personnel. Based upon the CT scan that was performed upon the victim at
approximately 10:45 that evening, Dr. Banister opined that the injury occurred about two
hours earlier. Having conducted a neutral review of all of the evidence, both for and
against the finding of guilt, we conclude the proof of guilt is not so obviously weak as to
undermine our confidence in the factfinder's determination. Johnson v. State, 23 S.W.3d
at 11. Neither do we find that the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof or is clearly wrong and unjust. See Ortiz v. State, 93
S.W.3d 79, 87 (Tex.Cr.App. 2002). As a result, appellant's first and second points of error
are overruled.

 By his fourth point of error, appellant maintains the trial court abused its discretion
in sentencing him to life imprisonment in violation of the Eighth Amendment of the United
States Constitution. Specifically, appellant claims the life sentence is grossly
disproportionate to the offense for which he was tried. We disagree.

 Texas courts have traditionally held that as long as the punishment is within the
range of punishment established by the Legislature in a valid statute, the punishment
assessed does not violate either the federal or Texas prohibitions against cruel and
unusual punishment. See Jordan v. State, 495 S.W.2d 949, 952 (Tex.Cr.App. 1973);
Samuel v. State, 477 S.W.2d 611, 614 (Tex.Cr.App. 1972); Rodriguez v. State, 917
S.W.2d 90, 92 (Tex.App.-Amarillo 1996, pet. ref'd); Robinson v. State, 906 S.W.2d 534,
536 (Tex.App.-Tyler 1995, no pet.). The trial court's assessment of life imprisonment was
within the range of punishment authorized by the Legislature. See Tex. Pen. Code Ann.
§ 12.32(a). 

 Moreover, because appellant did not object in the trial court to the alleged
disproportionality of the sentence, his fourth point of error presents nothing for our review. 
See Solis v. State, 945 S.W.2d 300, 301 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). 
Appellant's fourth point of error is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice


Do not publish.

 
1. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
2. Under the circumstances presented in this case, we assume without deciding that
a statement not the product of custodial interrogation may still be involuntary. 
3. The medical testimony at trial was copious. While it is undisputed appellant had
no access to the victim after September of 2001, he vehemently challenged the medical
evidence. The record reveals the victim was admitted to the hospital in November of 2001,
and again in December. Appellant claimed the subsequent admissions were the result of
additional shaking episodes. In contrast, the State maintained the victim, who was more
susceptible to head injury because of the previous trauma, merely suffered re-bleeds from
the original injury. Because we decide appellant's written statement is legally and factually
sufficient to support his conviction for causing the victim serious bodily injury on August
24, 2001, we need not review the trial court's resolution of that conflicting evidence.