NO. 07-02-0246-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 1, 2003



______________________________




JOHN HELTON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;



NO. 13,970-B; HONORABLE JOHN B. BOARD, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

OPINION


 Following appellant John Helton's plea of not guilty in a bench trial, the trial court
found him guilty of the offense of injury to a child and sentenced him to life in prison. By
this appeal, appellant contends: (1) the evidence is legally and factually insufficient to
support the conviction; and the trial court abused its discretion in (2) denying the motion
to suppress his oral and written statements; and (3) sentencing him to life imprisonment
in violation of the Eighth Amendment of the United States Constitution. Based upon the
rationale expressed herein, we affirm. 

 On August 24, 2001, emergency personnel transported appellant's daughter, the
two month old victim, to the hospital after appellant reported she was having difficulty
breathing. Upon discovering the victim had a severe subdural hematoma, two linear skull
fractures, retinal hemorrhages and a broken rib, doctors diagnosed her condition as
Shaken Baby Syndrome. The victim's physicians informed police that Shaken Baby
Syndrome results from "non-accidental trauma." 

 Initially, appellant denied any knowledge of the origin of the victim's injuries. A
couple of weeks after the victim was hospitalized, however, appellant provided police with
a written statement in which he admitted he "shook her [the victim] hard and her head hit
the doorframe of the bathroom door." Appellant explained he had "never been that mad
in [his] life," and he "just snapped." In addition to the written statement, appellant also
made oral statements of varying degrees of incrimination to law enforcement personnel. 

 In a motion to suppress his oral and written confessions, appellant alleged his
statements were involuntary and taken in violation of his Sixth Amendment right to
counsel. At a hearing on the motion, Detective Higley, a polygraph examiner, testified
appellant voluntarily transported himself to the Amarillo Police Department for the purpose
of undergoing a polygraph examination. Detective Higley told the court appellant was not
under arrest at the time he arrived at the police department, and he never placed appellant
under arrest. Detective Higley maintained appellant was free to leave the police
department at any time. Additionally, he testified he informed appellant of his Miranda (1)
rights as they appeared on the top of a form entitled "Amarillo Police Department
Polygraph Examination Warning." Appellant acknowledged his understanding of those
rights by signing the form. Then, according to Detective Higley, appellant submitted to a
polygraph examination. Following the exam, Detective Higley engaged in a conversation
with appellant, in which appellant admitted shaking the victim "hard." After the
conversation, Detective Higley escorted appellant to an interrogation room at the police
department where they were met by Sergeant Jones. Detective Higley testified appellant
left the police station at the conclusion of his interview with Sergeant Jones. Child
Protective Services employee Shannon Burch testified she observed Detective Higley
administer the polygraph examination to appellant. Her testimony was consistent with that
of Detective Higley.

 Sergeant Jones also testified at the hearing on the motion to suppress appellant's
statements. According to him, appellant was not under arrest at the time of the interview
and was free to leave at any time. Sergeant Jones averred that, not long after arriving at
the interrogation room, appellant admitted, "I did it." Prior to the interview, Sergeant Jones
apprised appellant of his statutory and constitutional rights by reading those rights as they
appeared on the top of a form entitled "Statement." During the interview, which began at
3:10 p.m. and concluded at 3:45 p.m., Sergeant Jones prepared in his own handwriting a
statement based upon appellant's oral statements. Sergeant Jones testified he did not
threaten appellant nor make any promises of leniency in exchange for appellant providing
a statement. Finally, Sergeant Jones testified that after he finished writing the statement,
appellant read it, made corrections to it, and signed it, then left the police station on his
own. In addition to Sergeant Jones, Child Protective Services employee Phillip Houlihan
was present during appellant's interview. Houlihan's testimony at the suppression hearing
mirrors that of Sergeant Jones. 

 Appellant testified at the suppression hearing that he arrived at the police
department on September 13, 2001, between 12:45 p.m. and 12:50 p.m., in time for his
polygraph examination scheduled for 1:00 p.m. Appellant claimed he made no
incriminating admissions to Detective Higley. He also could not remember Detective
Higley reading to him the warnings contained on the Polygraph Examination Warning form. 
Moreover, appellant claimed that following the polygraph examination, Detective Higley
squeezed his knee so forcefully the officer left red marks on his skin. Appellant testified,
"he [Detective Higley] was wanting me to confess." With respect to the written statement
that was attributed to him, appellant denied knowing its contents, and claimed he signed
the document to protect his family. Finally, appellant averred he requested the assistance
of an attorney during his interview with Sergeant Jones, but that Jones "said it was too
late." At the conclusion of the hearing, the trial court found appellant's oral and written
statements were knowing and voluntary and not the product of custodial interrogation. The
trial court reduced those findings to written findings of fact and conclusions of law. 

 Concluding the sufficiency of the evidence turns upon the propriety of the trial
court's ruling on the motion to suppress the written and oral statements, we initially
address appellant's third point of error. By that point, appellant specifically contends the
trial court abused its discretion by denying the motion to suppress because his oral and
written statements were involuntary. We disagree.

 The standard of review for the trial court's ruling on a motion to suppress is abuse
of discretion. See Oles v. State, 993 S.W.2d 103, 106 (Tex.Cr.App. 1999). In a
suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony. State v. Ross, 32 S.W.3d 853, 855
(Tex.Cr.App. 2000). Thus, the trial court is entitled to believe any or all of a witness's
testimony. Id. The evidence should be viewed in the light most favorable to the trial
court's ruling. See State v. Ballard, 987 S.W.2d 889, 891 (Tex.Cr.App. 1999). Moreover,
we should afford almost total deference to the trial court's determination of historical facts
that the record supports, especially when the fact findings are based upon an evaluation
of the witness' credibility and demeanor. Ross, 32 S.W.3d at 856 (citing Guzman v. State,
955 S.W.2d 85, 89 (Tex.Cr.App. 1997)).

 Voluntary, noncustodial statements are exempt from the requirements of Miranda
and article 38.22 of the Code of Criminal Procedure. Cf. Holland v. State, 770 S.W.2d 56,
58 (Tex.App.-Austin 1989), aff'd, 802 S.W.2d 696 (Tex.Cr.App. 1991). Therefore, we
begin our analysis with the trial court's finding that appellant's statements were not the
product of custodial interrogation.

 Custodial interrogation is questioning initiated by law enforcement officers after a
person has been taken into custody or otherwise deprived of his freedom in any significant
way. Cannon v. State, 691 S.W.2d 664, 671 (Tex.Cr.App. 1985) (citing Miranda v Arizona,
384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966). In determining whether an individual
was in custody, the court must examine all of the circumstances surrounding the
interrogation, but "the ultimate inquiry is simply whether there was a formal arrest or
restraint of movement of the degree associated with formal arrest." California v. Behler,
463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983).

 The Court of Criminal Appeals has outlined some general situations that may
constitute custody, including the following: (1) when the suspect is physically deprived of
his or her freedom of action in any significant way; (2) when a law enforcement officer tells
the suspect he or she cannot leave; (3) when law enforcement officers create a situation
that would lead a reasonable person to believe his or her freedom of movement has been
significantly restricted; and (4) when there is probable cause to arrest and law enforcement
officers do not tell the suspect he or she is free to leave. Dowthitt v. State, 931 S.W.2d
244, 255 (Tex.Cr.App. 1996). In short, we must look at the totality of the circumstances
and determine whether appellant's freedom of movement was restrained to a degree
associated with a formal arrest. See Rathbun v. State, 96 S.W.3d 563, 566
(Tex.App.-Texarkana 2002, no pet.).

 Having conducted a thorough review of the record, we find present none of the
situations delineated above in the events leading to appellant's written and oral statements
on September 13, 2001. Indeed, appellant voluntarily transported himself to the police
station on September 13, 2001, he was never placed under arrest prior to or on that date,
and he was free to, and, in fact, did, leave the station following the polygraph examination
and interview. Moreover, there is no evidence officers restricted appellant's movements
at the police station. We conclude a reasonable person in appellant's position would not
have believed he was restrained to the degree associated with formal arrest.

 Nothwithstanding the lack of custodial interrogation, appellant maintains his
statements were not voluntary. (2) Appellant claims the following circumstances rendered
the statements involuntary: (1) law enforcement officers failed to visually or aurally record
them; (2) Detective Higley squeezed his knee during their conversation; (3) Detective
Higley "pressed" him into giving a statement after he began to hyperventilate; (4) Sergeant
Jones denied him the opportunity to complete his own written statement; (5) appellant did
not inital any of the Miranda warnings; and (6) he was denied the right to counsel during
the interview with law enforcement.

 In reviewing the voluntariness of a confession, we look at the totality of the
circumstances. See Barefield v. State, 784 S.W.2d 38, 41 (Tex.Cr.App. 1989). Relevant
circumstances to evaluate if a defendant's will has been overborne include:

 [L]ength of detention, incommunicado or prolonged interrogation, denying
a family access to a defendant, refusing a defendant's request to telephone
a lawyer or family, and physical brutality . . . [and] a defendant's
characteristics and status, as well as the conduct of the police.


See King v. State, 831 S.W.2d 891, 894 (Tex.App.-Houston [14th] Dist. 1992, no pet.)
(citing Armstrong v. State, 718 S.W.2d 686, 693 (Tex.Cr.App. 1985)). 

 After examining the relevant circumstances in this case, we find no error in the trial
court's conclusion that appellant's statements were knowing and voluntary. Assuming
without deciding that appellant was "detained" at the police station, we find the length of
detention was not undue. Indeed, the record reveals appellant arrived at the police station
at approximately 12:45 p.m. for a 1:00 scheduled polygraph examination and left shortly
after completing a written statement at 3:45 p.m. Further, the preparation of the statement
lasted a mere 35 minutes. Moreover, there is no evidence in the record to establish that
any of appellant's family members were denied access to him or that police exercised
physical brutality during their contact with appellant. And while appellant testified he
requested an attorney, three other witnesses to the events of September 13, 2001 averred
no such request was made. Finally, with respect to appellant's hyperventilation episode,
the record reveals Detective Higley asked appellant not once, but twice, if he desired an
ambulance. On both occasions, appellant denied such assistance and appeared to "calm
down." 

 Moreover, as noted above, appellant's statements were not the product of custodial
interrogation; therefore, the requirement that statements be visually or aurally recorded
does not apply. See generally Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2003). 
In addition, nothing in the Code of Criminal Procedure requires even individuals who are
in custody to initial each of the Miranda warnings on a statement form. Nor does the Code
prohibit a police officer from preparing in his own handwriting a statement based upon the
oral statements of a suspect. Finally, though appellant makes much ado about Detective
Higley squeezing his knee during their conversation, other witnesses testified that Higley
merely patted appellant's knee in an apparent effort to console him. 

 In addition, other factors surrounding the taking of appellant's statement support a
finding that it was voluntary. Detective Higley, Sergeant Jones, and CPS employees
Phillip Houlihan and Shannon Burch each testified that appellant came to the police station
on his own. He was never handcuffed, never told that he was under arrest, or never told
that he was not free to leave. He was not denied any basic necessities, and was not
promised anything in exchange for his statement. In short, except for appellant's
assertions that he was "pressed" into giving a statement and denied the right to counsel,
there is no evidence his statement was involuntary. And, the determination of whether
appellant was "pressed" into giving a statement or denied the right to counsel was a
determination for the trial court to make based upon an evaluation of the credibility and
demeanor of the witnesses. See Loserth v. State, 963 S.W.2d 770, 773 (Tex.Cr.App.
1998). 

 At oral arguments, appellant urged this Court to hold that if a criminal defendant is
subject to the death penalty or life imprisonment, and law enforcement has the capability
to visually or aurally record his statement, it must do so before the statements will be
admissible at trial against him. According to appellant, the foregoing procedure is the only
reliable method for testing the voluntariness of a criminal defendant's statement. While
such a procedure may be advisable, appellant does not cite, and we have been unable to
find, any cases imposing the requirement on law enforcement. We decline appellant's
invitation to create a new rule of law. Appellant's third point of error is overruleld.

 By his first and second points of error, appellant claims the evidence is legally and
factually insufficient to support his conviction. We disagree. Evidence is legally
insufficient if, viewed in the light most favorable to the prosecution, no rational jury could
find the defendant guilty beyond a reasonable doubt. Bustamante v. State, No. 74, 079,
2003 Tex. Crim. App. Lexis 103 (Tex.Cr.App. June 4, 2003) (citing Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)). Evidence is factually
insufficient if, viewed without the prism of "the light most favorable to the verdict," the
evidence supporting the verdict is so weak or so against the overwhelming weight of
contrary evidence as to render the verdict clearly wrong and manifestly unjust. Id. (citing
Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000)). 

 Before determining whether the evidence is legally sufficient to sustain the
conviction, we must review the essential elements the State was required to prove. A
person commits the offense of injury to a child, inter alia, if he intentionally or knowingly,
by act, causes serious bodily injury to a child 14 years of age or younger. Tex. Pen. Code
Ann. § 22.04(a)(1) (Vernon 2003). Here, it is undisputed that the two-month old victim
suffered serious bodily injury. Having found appellant's written and oral confessions to
have been properly admitted, we conclude there is evidence from which a rational trier of
fact could have found beyond a reasonable doubt that appellant caused the injury. As a
result, we conclude the evidence is legally sufficient to support the trial court's finding that
appellant committed the offense of injury to a child.

 Next, we consider the factual sufficiency of the evidence to support appellant's
conviction. The crux of appellant's argument under this point is that the two-month old
victim was readmitted to the hospital on two occasions after he was incarcerated for
causing the August 24, 2001 injury. Because the victim continued to suffer injuries after
he was denied access to her, it follows, claims appellant, that another individual caused
the original injury. We disagree.

 Even if the victim was subjected to subsequent shaking incidents after the August
24, 2001 episode, appellant may still be held criminally responsible for the original injury. (3) 
This is so because his statement corroborates the medical evidence elicited at trial. The
neurosurgeon who treated the victim during her August 24, 2001 admission, Dr. Banister, 
testified that the victim's injuries were caused by someone shaking her, then hitting her
head against a hard object. After reviewing appellant's written statement, Dr. Banister
agreed appellant's actions were consistent with the mechanism of the victim's injuries. 
Furthermore, two other physicians testified that the victim's injuries were consistent with
the mechanism of injury described by appellant. With respect to the timing of the victim's
injuries, appellant explained in his written statement that the shaking and impact episode
occurred at approximately 8:30 p.m. on August 24, 2001. He also acknowledged he had
sole access to the victim from 6:15 p.m.or 6:20 until he reported his daughter's symptoms
to emergency personnel. Based upon the CT scan that was performed upon the victim at
approximately 10:45 that evening, Dr. Banister opined that the injury occurred about two
hours earlier. Having conducted a neutral review of all of the evidence, both for and
against the finding of guilt, we conclude the proof of guilt is not so obviously weak as to
undermine our confidence in the factfinder's determination. Johnson v. State, 23 S.W.3d
at 11. Neither do we find that the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof or is clearly wrong and unjust. See Ortiz v. State, 93
S.W.3d 79, 87 (Tex.Cr.App. 2002). As a result, appellant's first and second points of error
are overruled.

 By his fourth point of error, appellant maintains the trial court abused its discretion
in sentencing him to life imprisonment in violation of the Eighth Amendment of the United
States Constitution. Specifically, appellant claims the life sentence is grossly
disproportionate to the offense for which he was tried. We disagree.

 Texas courts have traditionally held that as long as the punishment is within the
range of punishment established by the Legislature in a valid statute, the punishment
assessed does not violate either the federal or Texas prohibitions against cruel and
unusual punishment. See Jordan v. State, 495 S.W.2d 949, 952 (Tex.Cr.App. 1973);
Samuel v. State, 477 S.W.2d 611, 614 (Tex.Cr.App. 1972); Rodriguez v. State, 917
S.W.2d 90, 92 (Tex.App.-Amarillo 1996, pet. ref'd); Robinson v. State, 906 S.W.2d 534,
536 (Tex.App.-Tyler 1995, no pet.). The trial court's assessment of life imprisonment was
within the range of punishment authorized by the Legislature. See Tex. Pen. Code Ann.
§ 12.32(a). 

 Moreover, because appellant did not object in the trial court to the alleged
disproportionality of the sentence, his fourth point of error presents nothing for our review. 
See Solis v. State, 945 S.W.2d 300, 301 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). 
Appellant's fourth point of error is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice


Do not publish.

 
1. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
2. Under the circumstances presented in this case, we assume without deciding that
a statement not the product of custodial interrogation may still be involuntary. 
3. The medical testimony at trial was copious. While it is undisputed appellant had
no access to the victim after September of 2001, he vehemently challenged the medical
evidence. The record reveals the victim was admitted to the hospital in November of 2001,
and again in December. Appellant claimed the subsequent admissions were the result of
additional shaking episodes. In contrast, the State maintained the victim, who was more
susceptible to head injury because of the previous trauma, merely suffered re-bleeds from
the original injury. Because we decide appellant's written statement is legally and factually
sufficient to support his conviction for causing the victim serious bodily injury on August
24, 2001, we need not review the trial court's resolution of that conflicting evidence.



n>
          We agree the evidence does not compel the inference appellant was Craft’s assailant
but we find the jury reasonably could have drawn an inference of appellant’s guilt from the
evidence it heard. Considering the role of the jury to draw reasonable inferences from the
evidence, Hooper, 214 S.W.3d at 15-17, and viewing the entire record in a neutral light, we
do not find the evidence favoring guilt is so weak that the jury’s verdict seems clearly wrong
and manifestly unjust or that, giving due consideration to the evidence contrary to the verdict,
the great weight and preponderance of all the evidence contradicts the jury’s verdict. The
evidence is factually sufficient. Appellant’s first issue is overruled.
Issue 2: Motion to Suppress
          In his second issue, appellant asserts the trial court erred by denying his request to
suppress evidence obtained in the duplex apartment despite written consent to search given
by the landlord. Appellant’s argument is founded on the holding that a landlord typically
cannot validly consent to the search of a house that he has rented to another. See Maxwell
v. State, 73 S.W.3d 278, 282 n.3 (Tex.Crim.App. 2002), citing Chapman v. United States, 365
U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). We review a trial court's ruling on a motion to
suppress evidence for an abuse of discretion by the court. Villarreal v. State, 935 S.W.2d
134, 138 (Tex.Crim.App.1996). In this review we give almost total deference to the trial court's
determination of historical facts and review the court's application of search and seizure law
de novo. Guzman v. State, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). Therefore, we will
review the evidence in a light most favorable to the trial court's ruling and assume that the trial
court made implicit findings of fact supported by the record. Carmouche v. State, 10 S.W.3d
323, 327-28 (Tex.Crim.App. 2000) (citations omitted). To find error, the court’s judgment
must be “outside the zone of reasonable disagreement” or not “reasonably supported by the
record.” State v. Dixon, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). 
          At the hearing on the motion to suppress, the State presented testimony from a police
officer and photographs of the apartment. Appellant’s uncles Alfred and Efrain Mendez, and
appellant, testified for appellant. Although they were not introduced, there was some
testimony about the contents of written statements Alfred and Efrain Mendez gave police a
day or two after the search. In the exercise of its fact-finding role, the trial court reasonably
could have determined, from testimony at the hearing, that no one was living in the apartment
on September 20; that appellant and his common-law wife previously had rented the
apartment but had paid only part of August’s rent and no rent for September; that the
common-law wife was residing in another place; that the apartment was owned by Efrain
Mendez and his sister; that they intended to re-rent the apartment as soon as it was cleaned
up; that the apartment was not rented to appellant; and that appellant had left town. On those
facts, the trial court reasonably could have concluded Efrain Mendez, the apartment’s owner,
had actual authority to consent to its search. See People v. Superior Court of Santa Clara
County, Respondent, Christopher Eugene Walker, Real Party in Interest, 49 Cal.Rptr. 831
(Cal.App. 2006) (owners of property may consent to police search when no other persons are
legitimately occupying it). See also People v. Carr (1972) 8 Cal.3d 287, 298, 104 Cal.Rptr.
705, 502 P.2d 513 (same).
Issue 3: Article 38.23 Jury Instruction
          In his third issue appellant maintains the trial court erred in denying his request for an
instruction under article 38.23(a) of the Texas Code of Criminal Procedure because the
evidence raised a fact issue on whether the consent to search the apartment was legally
obtained. By appellant’s view of the evidence, there existed a fact issue on the reasonableness
of the officer’s belief appellant’s uncles Alfred and Efrain Mendez had authority to consent to
search of the apartment. We disagree, and overrule the issue.
          There are three requirements to warrant an article 38.23 instruction: (1) the evidence
heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively
contested; and (3) the contested factual issue must be material to the lawfulness of the
challenged conduct in obtaining the evidence. Madden v. State, 242 S.W.3d 504, 510
(Tex.Crim.App. 2007). The requirement for establishing a factual dispute is simply that an “issue
[is] raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached,
or contradicted, and even when the trial court thinks that the testimony is not worthy of belief.” 
Walters v. State, 247 S.W.3d 204 (Tex.Crim.App. 2007). The evidence presented is viewed in
the light most favorable to the requested instruction. Bufkin v. State, 207 S.W.3d 779, 782
(Tex.Crim.App. 2006). However, only the testimony heard by the jury can be considered to
determine whether an article 38.23 instruction should be given. Madden, 242 S.W.3d at 510.
          Evaluating the evidence bearing on the reasonableness of the officers’ search based on
consent, we focus on the facts available to the them at the time. See Brimage v. State, 918
S.W.2d 466, 481 (Tex.Crim.App. 1994), citing Illinois v. Rodriguez, 497 U.S.177, 189, 110 S.Ct.
2793, 111 L.Ed.2d 148 (1990) (discussing apparent authority). Although appellant, and his
uncles Alfred and Efrain Mendez testified at the hearing on the motion to suppress, none of
them testified before the jury. As noted, case law holds a landlord typically cannot validly
consent to the search of a house that he has rented to another. Maxwell, 73 S.W.3d at 282 n.
3. Limiting our consideration to the evidence heard by the jury, we see no evidence affirmatively
contesting the State’s evidence the apartment was not rented when Alfred and Efrain Mendez
gave police consent to search it on September 20. In particular, we do not agree the impression
Officer Sutton formed on the previous day, before the officers’ contact with appellant’s uncles,
constitutes such evidence. See Madden, 242 S.W.3d at 513 (discussing affirmative evidence
requirement). 
Issue 4: Ineffective Assistance of Counsel
          In his fourth issue appellant asserts his trial counsel provided inadequate assistance
because he did not request a sudden passion instruction on punishment. 
          To prevail on a claim of ineffective assistance of counsel, a defendant must establish by
a preponderance of the evidence that his lawyer's performance fell below an objective standard
of reasonableness and that there is a “reasonable probability” the result of the proceeding would
have been different but for counsel's deficient performance. Strickland v. Washington, 466 U.S.
668, 693-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex.Crim.App. 2001). A reasonable probability is a probability sufficient to undermine
confidence in the outcome of the trial. Hernandez v. State, 726 S.W.2d 53, 55
(Tex.Crim.App.1986). The purpose of this two-pronged test is to judge whether counsel's
conduct so compromised the proper functioning of the adversarial process that the trial cannot
be said to have produced a reliable result. Thompson v. State, 9 S.W.3d 808, 812-13
(Tex.Crim.App.1999).
          During the punishment phase of trial, a defendant may argue that he caused the death
while under the immediate influence of sudden passion arising from an adequate cause.
McKinney v. State, 179 S.W.3d 565, 569 (Tex.Crim.App. 2005); see Tex. Penal Code Ann. §
19.02(d) (Vernon 2003). “Sudden passion” is “passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed which passion arises
at the time of the offense and is not solely the result of former provocation.” Tex. Penal Code
Ann. § 19.02(a)(2) (Vernon 2003). “Adequate cause” is “cause that would commonly produce
a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render
the mind incapable of cool reflection.” Tex. Penal Code Ann. § 19.02(a)(1). Sudden passion is
a mitigating factor that, if found by the fact finder to have been proven by a preponderance of
the evidence, reduces the offense from a first-degree felony to a second-degree felony. See
Tex. Penal Code Ann. § 19.02(c)-(d).
          A defendant seeking a jury instruction on sudden passion must prove there was an
adequate provocation; that a passion or an emotion such as fear, terror, anger, rage or
resentment existed; that the homicide occurred while the passion still existed and before there
was reasonable opportunity for the passion to cool; and there was a causal connection between
the provocation, the passion, and the homicide. McKinney v. State, 179 S.W.3d 565, 569
(Tex.Crim.App. 2005); Trevino v. State, 100 S.W.3d 232, 238 (Tex.Crim.App. 2003). In
reviewing a case involving a sudden passion jury charge, it is our duty to focus on the evidence
supporting that charge, not on the evidence refuting it. Trevino, 100 S.W.3d at 239. On appeal,
appellant supports his argument he was entitled to a sudden passion instruction by first
contending the beer can with his DNA found at the scene supported a reasonable inference he
had been a welcome guest at Craft’s home at some point before the murder. Second, he
argues that music playing in the house when police arrived, the presence of a pornographic
DVD in the player, the belief expressed by Larry Menafee that Craft was bisexual, and the
notation by police that the button at the waist of Craft’s pants was unbuttoned when his body
was found all support a reasonable inference that Craft had attempted some sort of sexual crime
on appellant, inciting appellant’s rage and leading to the murder. Third, appellant highlights the
nature of the crime, noting (1) Craft was stabbed at least sixty times and, as the forensic
pathologist testified, this indicated rage on the part of his killer; (2) Craft’s bedroom appeared
to have been ransacked; (3) the door to the bedroom appeared to have been forced open; and
(4) appellant’s fingerprints were on the doorhandle. Appellant argues all these facts indicate “a
cause that would commonly produce a degree of . . . rage . . . [or] terror in a person of ordinary
temper, sufficient to render the mind incapable of cool reflection” and further, support a
reasonable inference of the adequate cause of the rage and murder. 
          The State acknowledges the forensic pathologist’s testimony that the number and cluster
of wounds on the victim’s back, when the victim may not have been offering resistance, was a
sign of rage motivating the killer. But, the State contends, the remainder of appellant’s
evidence is entirely speculative, and we must agree. Appellant argues the presence of his beer
can indicates a social visit with Craft. However, there was no alcohol in Craft’s blood at the time
of his death, and no evidence shows whether appellant drank the beer before or after Craft’s
death. Further, we cannot agree the facts that a heterosexual pornographic movie was playing
in the DVD player, that Craft’s pants were unbuttoned, and that one witness thought Craft was
bisexual or gay permit a reasonable inference Craft attempted to perpetrate a sexual crime on
appellant, inciting his rage and leading him to murder. See Hooper v. State, 214 S.W.3d 9, 16
(Tex.Crim.App. 2007) (distinguishing inference from speculation). 
          The evidence supporting a sudden passion instruction fails for at least two reasons. 
Although the pathologist testified that the manner of the killing indicated rage, neither his
testimony nor any other evidence addressed the adequacy of the supposed sexual advance to
produce such rage in a person of ordinary temper. Evidence is thus lacking that appellant’s rage
arose from an adequate provocation. McKinney, 179 S.W.3d at 569. Second, because of the
speculative nature of the evidence, it does not show the required causal connection between the
provocation, the passion and the stabbing. Id. Combined, the missing elements are of evidence
the asserted provocation would have produced a degree of rage in a person of ordinary temper
sufficient to cause that ordinary person to lose his sensibilities and respond by stabbing the victim
sixty times. If the evidence demonstrates no legally adequate cause, as is the case here, no
amount of subjective passion will justify submission of a sudden passion instruction. See Willis
v. State, 936 S.W.2d 302, 308 (Tex.App.–Tyler 1996, pet. ref’d) (defendant not entitled to a
reduced sentence for murder when his emotional responses are aberrational according to
societal norms). 
          Consequently, there was no reason for trial counsel to request an instruction on sudden
passion. Appellant has failed to rebut the strong presumption that his trial counsel's decision not
to request an instruction on sudden passion fell within the wide range of reasonable professional
assistance. See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Thompson, 9 S.W.3d at 814. We
overrule appellant’s fourth issue.
Issue 5: Exclusion of evidence
          Via his fifth issue, appellant contends the trial court erred by barring him from asking a
police witness about police reports of complaints by two men in 1997 and 1998 accusing Craft
of attempted sexual assault. Appellant suggests that questioning officers about reports of Craft’s
possible attempted assaults would uncover potential alternative perpetrators of his murder. We
overrule the issue.
          Responding to the State’s objection to appellant’s attempt to question the officer about the
reports, his counsel told the court, “Your honor, I would like to go into two police reports with this
witness that he reviewed years earlier involving Mr. Craft as a suspect into [sic] attempted sexual
assaults. He reviewed them. He signed off on them. He felt there was credible evidence that
the event happened. I think this is relevant to establish whether there were other suspects in this
case considering what went on in the past regarding this . . . victim.” 
          The court asked counsel, “What other suspects?” Counsel responded, “Any other
suspects, Judge. When you have possible reports involving attempted sexual assault and you
have this sort of activities outlined in these police reports, it’s my submission . . . that opens up
the possibility of other suspects that they could have investigated. I want to ask him if they’re
trying to track down that line of investigation.” 
          Clarifying his theory to the court, counsel then said, “I’m saying that if this individual, Mr.
Craft, has a history of this type of behavior, then it is much more likely that there were other
people out there with either the reason or the means to have committed this act and that’s what
I want to ask about.”
          We initially confront the question whether counsel’s argument to the court was a sufficient
statement of what the excluded evidence would show to preserve error. See Guidry v. State, 9
S.W.3d 133, 153 (Tex.Crim.App. 1999) (error in exclusion of evidence not presented for review
absent statement of what excluded evidence would show). The State does not expressly
contend error was not preserved, so we will assume, arguendo, the issue is presented for review.
           Addressing “alternative perpetrator” evidence, the Court of Criminal Appeals has noted
that although an appellant certainly has a right to establish his innocence by showing that
someone else committed the crime, he still must show that his proffered evidence "is sufficient,
on its own or in combination with other evidence in the record, to show a nexus between the
crime charged and the alleged ‘alternative perpetrator.'" Wiley v. State, 74 S.W.3d 399, 406
(Tex.Crim.App. 2002). The nexus must include proof that the other person “committed some act
directly connecting him with the crime.” Wiley, 74 S.W.3d at 406 n.19 (quoting State v. Woods,
508 S.W.2d 297, 300 (Mo.App.1974)). In Wiley, the defendant identified a particular alternative
perpetrator but the Court of Criminal Appeals held that the probative value of the defendant’s
proffered evidence of his involvement was slight because of its speculative nature. The court
further held that even assuming the evidence had “some marginal relevance,” it would not
withstand the balancing required by Rule of Evidence 403. Wiley, 74 S.W.3d at 407. Here,
appellant does not contend that his proffered evidence even identifies a particular alternative
perpetrator, much less that the asserted perpetrator had committed some act directly connecting
him with Craft’s murder. Compared with the requirements outlined in Wiley, the proffer consisted
merely of “unsupported speculation that another person may have done the crime.” Id. at 407. 
The trial court did not abuse its discretion by excluding it.
          Having overruled all of appellant's issues, we affirm the trial court's judgment.        
                                                                           James T. Campbell

                                                                                     Justice

 
 
 
 
Do not publish.